[Civ. No. 3807. Third Appellate District.—June 24, 1929.]

CHARLES L. FOUCH, Respondent, v. CLARENCE W. WERNER, Appellant.

Irving D. Gibson for Appellant.

Martin I. Welsh for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment for damages for injuries sustained in a motorcycle accident.

The plaintiff was employed at a gas station located at 30th and M Streets in the city of Sacramento. At 6:30 P. M. on April 1, 1927, he mounted his motorcycle and started for home, traveling down 30th Street to Stockton Boulevard, and thence southerly along the proper side of the boulevard to the point where it was intersected from the southwest by 35th Street, which entered it at an angle of about 45 degrees. It was a dark and rainy night. The plaintiff was traveling at a speed of about fifteen miles an hour. His headlight was lighted. There were no street lights at this particular corner. The defendant was driving his Chrysler automobile northerly along 35th Street on his way to the office of the Sacramento Union where he was employed. There is evidence from which the jury may reasonably have inferred that his view to the left may have been obscured by side curtains, and that he failed to turn on his headlights. Arriving at the intersection of 35th Street with Stockton Boulevard, the defendant stopped his machine and then slowly turned to his left into the boulevard, running in intermediate gear not faster than eight or ten miles an hour. He did not observe the plaintiff's motorcycle approaching from the north. The front end of his machine had scarcely reached the middle line of Stockton Boulevard when the crash occurred. The plaintiff claimed that in the driving rain and darkness he was unable to clearly see an object at a distance greater than from ten to fifty feet, and that the defendant had no headlights lighted; that he first saw the defendant's machine about ten feet ahead of him and directly in the course he was driving. The pavement was wet and slippery. He immediately applied his brakes but was unable to avoid the collision. His motorcycle struck the left rear fender and wheel of the defendant's car, which was whirled about by the force of the impact, and the plaintiff and his motorcycle were hurled along the pavement some distance. Probably as a result of his contact with the defendant's machine, the plaintiff sustained a very bad com-

minuted fracture of the lower left limb. The ankle and bones of his left foot were also crushed to an extent that the attending physician testified there would be a permanent defect which would impair his ability to walk. He was confined to the hospital forty-six days, and was required to have the fracture reduced by means of an operation and the anchoring of the shattered bones by means of a silver plate. He endured great pain, and was walking with crutches at the time of the trial, six months after the accident occurred. The jury rendered a verdict of damages in the sum of $10,000. ■ The chief controversy is over the question as to whether defendant's headlights were lighted at the time of the accident. There was a flat contradiction regarding this subject, and, therefore, upon appeal, under the well-established rule, this court will be bound by the judgment.

The plaintiff testified as follows: "It was raining at the time, was dark, and I turned on my lights and started down 30th street . . . to Stockton boulevard. . . . It was about a quarter to seven. . . . Q. You say it was dark and stormy? A. Yes. . . . It was dark. Q. Could you see the length of this room? A. No sir. . . . Q. Could you see ahead as far as 200 feet? . . . A. Just a blur. . . . I observed the speedometer. . . . I was going at the rate of about 15 miles an hour. . . . As I approached 35th street and the Stockton boulevard, I was going along, operating my machine about 15 miles an hour, observing the traffic ahead of me, and as I came to 35th street, all of a sudden, this car appeared diagonally in front of me, without lights, without a horn, or any warning whatsoever. . . . I applied my brakes. Q. How far was the car from you? A. About ten feet. . . . Q. You do not know whether or not Mr. Werner, the driver of the car that you ran into, had headlights or not? A. They were not on. . . . I could see his headlight. . . . Q. Was that lit or not? A. It was not."

Mr. Perry, who was following in a machine about 100 feet behind the plaintiff at the time of the accident, testified that it was dark and drizzling and that the plaintiff was traveling about fifteen miles an hour, and that he could discern objects only about fifty feet away. He said: "Q. I will ask you . . . if the automobile that was involved in the collision had on headlights? A. I did not see any. . . .

I was looking straight forward. . . . Q. During all that time you saw no headlight? A. No.''

Mr. Graham also testified on behalf of the plaintiff regarding this subject: ''Q. Did you see the lights of the defendant's car as it came into the upper Stockton boulevard? A. No, I did not see no lights. . . . I did not examine the car. . . . I turned over there [where it was parked] and looked at it; there were no lights on it.''

The record leaves no real controversy over the fact that it was dark enough at the time of the accident to require the use of headlights pursuant to the California Vehicle Act. The defendant himself testified: ''Q. When you left your home was it dark or light? A. It was dark. Q. Did you have your headlights on when you left the house? A. My headlights were on when I left.''

Section 99 of the Vehicle Act of California (Stats. 1923, p. 517), provides that: ''Every vehicle when upon any public highway within this state during the period from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of two hundred feet ahead, shall be equipped with lighted lamps and lighted headlights as herein respectively provided . . . ''

█ Failure to conform to the foregoing statute with respect to the use of headlights is negligence *per se*. If the lack of such lights proximately contributed to the collision and consequent injuries which were sustained by the plaintiff, in the absence of contributory negligence on the part of the plaintiff the defendant would be liable for damages. (*Chalmers* v. *Hawkins*, 78 Cal. App. 733, 740 [248 Pac. 727]; *Fenn* v. *Clark*, 11 Cal. App. 79 [103 Pac. 944]; 19 Cal. Jur. 632, sec. 65.)

. █ It is true that the court will take judicial notice of the time when the sun rises and sets (Jones on Evidence, 3d ed., p. 171, sec. 129; *People* v. *Chee Kee*, 61 Cal. 404; *People* v. *Mayes*, 113 Cal. 618 [45 Pac. 860]), and may so instruct the jury. (Sec. 2102, Code Civ. Proc.) It is also true that the sun set at 6:29 o'clock P. M. on April 1, 1927, according to the government weather bureau reports. █ Since the exact time when the accident occurred is somewhat in doubt in rendering a judgment for plaintiff it be-

came necessary for the jury to first determine, (1) Whether, pursuant to statute, the time of night, or the insufficiency of daylight, required the headlights to be lighted; (2) Whether they were actually lighted, and (3) If not, whether this omission proximately caused the accident. The verdict of the jury presupposes the answering of all these questions adversely to the defendant, and while there is a direct conflict of testimony, the record contains substantial evidence upon which to support the judgment upon each of these issues.

There was some testimony on the part of the defendant tending to impeach the plaintiff respecting the rate of speed at which he contended his motorcycle was traveling at 'the time of the accident. But in view of the conflict of evidence the verdict of the jury is also conclusive on this subject.

The appellant contends that the court erred in giving certain instructions which he claims are conflicting and inconsistent. At the request of the plaintiff the court quoted sections 99, 129a and a portion of 130a of the California Vehicle Act, with respect to the necessity of maintaining lighted headlights on the automobile; the giving of a visible warning signal before changing the course of a machine on a public highway, and the necessity of turning the course of a machine by going to the left of the central intersecting point of streets, and added the following: "A violation of a provision of a statute (or ordinance) intended to regulate the conduct of people while in the use of the streets or highways is of itself negligence, and if such violation on the part of any person so using the streets or highways is the proximate cause of an injury to another, the former would thereby be liable to the one so injured for all of the damage proximately resulting to the latter thereby, provided that the latter was not himself guilty of negligence which proximately contributed to his own injury."

At the request of the defendant the court also instructed the jury that "unless it was proven by a preponderance of the evidence that he (the defendant) failed to use ordinary care, the verdict must be in favor of the defendant."

These instructions, which were given in the language of the statute, were neither inconsistent nor erroneous. (*Pemberton* v. *Arny*, 42 Cal. App. 19 [183 Pac. 356]; *Squier*

v. *Davis Standard Bread Co.,* 181 Cal. 533 [185 Pac. 391];
19 Cal. Jur., p. 764, sec. 157.) Ordinarily injuries sustained
as a result of the violation of a statute are actionable on
the theory that such conduct constitutes negligence *per se.*
The exercise of ordinary care requires the observance of
statutes or ordinances with relation to a particular subject.
(19 Cal. Jur., p. 632, sec. 65; 20 R. C. L., p. 38, sec. 33;
1 Thompson's Commentaries on Negligence, p. 12, sec. 10.)
The omission to observe the mandates of a regulatory statute
is itself evidence of negligence. (*Mora* v. *Favilla,* 186 Cal.
199, 202 [199 Pac. 17].) If this failure to conform to the
statute proximately contributes to the accident complained
of, it will become the basis of an action for damages. Circum-
stances may exist which refute the assumption of negligence
for the breach of a regulatory statute, such as the necessity
for prompt action in an emergency, the obstruction of a
portion of the highway along which it is ordinarily proper
to drive compelling the operator of a machine to use the
wrong side, or the sudden disconnecting of the wiring system
of an automobile causing the extinguishing of the head-
lights. But such unusual circumstances become matters of
defense, the burden of proving which rests upon the one
who is charged with a violation of the statute. In the
present case no such unusual conditions or circumstances
existed or are relied upon by the appellant. There was
therefore no error in the giving of these instructions.

The appellant contends that the foregoing instructions
with relation to the violation of the California Vehicle Act
are inconsistent with the following charge, which was given
to the jury: "Negligence is either the omission of a person
to do something which an ordinarily prudent person would
have done under given circumstances or the doing of some-
thing which an ordinarily prudent person would not have
done under such circumstances. It is not absolute or to be
measured in all cases in accordance with some precise stand-
ard but always relates to some circumstance of time, place
and person. . . . "

This appears to be a correct statement of the law.
It is true that an essential ingredient of actionable negli-
gence is the omission to perform a duty which the law im-
poses upon one (1 Thompson's Commentaries on Negligence,
p. 4, sec. 3), and that the term negligence has no fixed or

invariable application, but, as the court says, in the last-quoted instruction, it must depend upon surrounding circumstances and conditions. (19 Cal. Jur., p. 549, sec. 4.) A definition of what constitutes negligence must, therefore, be relative and variable in its application, dependent upon the surrounding circumstances. The standard of care employed in section 1714 of the Civil Code, the purport of which was given in the last-quoted instruction, is a mere adoption of Baron Alderson's familiar definition of the term negligence as it appears in the celebrated case of *Blyth* v. *Birmington Waterworks Co.*, 11 Exch. 784. It accepts as the test the standard of an ordinarily prudent man under normal circumstances, and leaves it for the jury to determine what such an individual would do under such circumstances. The presence of unusual or extraordinary circumstances affecting the transaction will always modify the application of the general rule. These unusual conditions are, however, matters of defense, and when one claims the existence of no such extraordinary circumstances and offers no proposed instructions regarding such exceptions, he may not complain of a charge to the jury which is confined to a declaration of the general rule. (*Mora* v. *Favilla, supra*.)

There was no prejudicial error in refusing defendant's instruction "C" respecting the credibility of witnesses and the weight of testimony, for the reason that they were sufficiently covered by defendant's instructions "T" and "U." Nor was the modification of defendant's instruction "D" erroneous. There was no serious controversy regarding the nature or seriousness of plaintiff's injuries. The portion of the instruction which was eliminated is sufficiently covered by plaintiff's instruction number "2," which was given and which clearly charges the jury that the burden is upon the plaintiff "to prove his case by a preponderance of the evidence." The same observation also applies to the modification and refusal of defendant's instructions "Q" and "V," respectively. It was unnecessary for the court to give to the jury the entire language of section 130 of the California Vehicle Act in charging it that before turning on to a public highway the driver "shall give a signal plainly visible to the driver of such other vehicle" indicating his intention so to do. The nature or sufficiency of the signal was not challenged by the plaintiff. It was

not contended that an improper signal was given. The plaintiff testified that the defendant turned into Stockton boulevard "without a horn, or any warning whatever." The defendant did testify that he extended his arm in the proper manner before turning into the boulevard. He offered no instruction upon this subject. ■ The arm signals required by statute are intended as warnings not only to drivers of machines in the rear but also to the drivers of "any other vehicle (which) may reasonably be affected by such movement." Moreover, it is quite evident from the record that the chief act of negligence relied upon was the claim that defendant's headlights were not lighted. If defendant's machine could not be seen by the plaintiff the operating signals would be unavailing. The jury was quite fully instructed regarding the material issues of the case. There appears to have been no prejudicial error in the court's charge. ■ There was no error in refusing to strike out the plaintiff's reply to the effect that if the defendant's headlights had been on he could have seen them. It does not appear to be a conclusion for one to state he could have seen lighted headlights under the circumstances disclosed by the record. Nor does there appear to have been prejudicial error in any of the other rulings of the court respecting the introduction of the evidence.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.