[L.A. No. 30736. Feb. 17, 1978.]

PHILLIP GARY WILLIS et al., Plaintiffs and Appellants, v.
JARED GORDON et al., Defendants and Respondents.

COUNSEL

William Jerome Pollack, Herman & Williams, Ross L. Williams and Leonard Sacks for Plaintiffs and Appellants.

Stockdale, Peckham, Estes, Ramsey, Lawler & Iorillo and Jerry A. Ramsey for Defendants and Respondents.

OPINION

MANUEL, J.—In this action for wrongful death and personal injuries, plaintiffs Phillip G. Willis and Ramiro Galarza appeal from a judgment of nonsuit entered at the close of their opening statements. Our review of the record convinces us that the trial court erred in granting the motions for nonsuit.

Plaintiffs' opening statements set forth the facts they intended to prove. The accident occurred on November 24, 1971, after defendants had a flat tire and parked on the outside of a curve of Route 133, a well-travelled, 65-mile-per-hour highway. The curve had an angle of 25 degrees and plaintiffs said they would show it more dangerous than its relatively slight angle indicates. At the point where defendants stopped, the highway consisted of a single lane in each direction and a six-foot, four-inch "fog lane" separated from the traffic lane by a "fog line." There was a steel guardrail for the length of the curve and all the area from the center line to the guardrail was paved.

Defendants parked their car, a Volkswagen, entirely to the right of the "fog line," but plaintiffs offered to prove that the area was nevertheless a travelled part of the highway. Fifteen to thirty feet beyond where defendants stopped, the guardrail ended and the road was bounded by a wide, flat, unpaved shoulder. It was stated that defendant Jared Gordon, driver of the Volkswagen, would testify he could have driven further and parked on this shoulder, but decided against it to avoid further damaging his tire. He was also to testify that after he and his wife tried their jack and discovered it would not work, defendants agreed that Mrs. Gordon would "hitch" a ride to get another jack while Mr. Gordon stayed with the car. It was admitted that defendants took no measures to alert oncoming traffic to the presence of their vehicle and Jared Gordon remained outside the car, sitting on the guardrail or walking around away from the vehicle, despite its dangerous position.

Travelling in the same direction as defendants, Carol Willis, the deceased wife of plaintiff Phillip Willis, approached defendants' car. She was driving under the speed limit, and her car was straddling the "fog line." It was about 5 p.m., 14 minutes after sunset, but there was still light. She was a small woman driving a Volkswagen and following behind two standard sized cars that were also straddling the "fog line" as they slowly accelerated away from her. Glare from the sunset and the two larger cars may have obstructed the deceased's view of the defendants' car until she was quite close. In any event, Mrs. Willis swerved left to avoid hitting the Gordon car, crossed over the center line, and collided with a third Volkswagen driven by plaintiff Galarza. Mrs. Willis was killed and plaintiff Galarza suffered serious injuries; decedent's husband and Mr. Galarza join in this action against the Gordons.

The trial court granted the nonsuit for defendants against both plaintiffs holding that "[i]t [was] clear . . . that the [accident] was caused

as the proximate [result] . . . of the negligence of the deceased in driving her automobile . . . and [in] moving upon the parking lane." The court apparently was of the opinion that the Gordons did not violate any traffic law and that their conduct was not a substantial factor in the collision.

■ A nonsuit on the opening statements is warranted "only when the court [can] conclude . . . from [all the facts and inferences] that . . . there will be no evidence of sufficient substantiality to support a judgment in favor of the plaintiff[s]." (*Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 868 [86 Cal.Rptr. 359]; *Estate of Lances* (1932) 216 Cal. 397 [14 P.2d 768]; *Connor* v. *Great Western Savings & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].) It is well established that "[w]hether a particular inference *can* be drawn from certain evidence is a question of law, but whether the inference *shall* be drawn, in any given case, is a question of fact. . . ." (*Blank* v. *Coffin* (1942) 20 Cal.2d 457, 461 [126 P.2d 868]; italics added.)

■ The issue before us, therefore is: Can it be said as a matter of law that the opening statements permit no construction other than that plaintiffs failed to sustain a prima facie case of actionable negligence against the defendants?

Section 22504 of the Vehicle Code provides: "(a) Upon any highway in unincorporated areas no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or leave the vehicle off such portion of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction. . . . (b) This section shall not apply to the driver of any vehicle which is disabled in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving [it] . . . on the roadway . . . ."

We noted in *Thomson* v. *Bayless* (1944) 24 Cal.2d 543, 546-547 [235 P.2d 234] that ". . . [T]he courts in this state have uniformly held . . . that a prima facie case of negligence is established under section 582 [the predecessor to section 22504] by proof that the vehicle was left on the paved portion of the highway . . . and . . . the burden to show that it was not practicable to drive off the main traveled portion of the highway rests upon the operator of such vehicle. [Citations omitted.]"

Applying the rule of *Thomson* in the instant case, whether defendants were negligent under the statute was a question of fact. Defendants argue that there was no violation of section 22504 as they were parked to the right of the fog line and therefore off the roadway. However, construing the opening statements most strongly in favor of plaintiffs, a jury could find that the paved area to the right of the fog line was a travelled portion of the highway (*Fry* v. *Young* (1968) 267 Cal.App.2d 340 [73 Cal.Rptr. 62]; *Silvey* v. *Harm* (1932) 120 Cal.App. 561 [8 P.2d 570]) and that defendants' car was not disabled to such an extent that they were excused from parking on the unpaved shoulder. (*Lane* v. *Jaffe* (1964) 225 Cal.App.2d 172 [37 Cal.Rptr. 171]; *Ketchum* v. *Pattee* (1940) 37 Cal.App.2d 122 [98 P.2d 1051]; *Wilson* v. *Droege* (1930) 110 Cal.App. 578 [294 P. 726].)

The opening statements contained facts which when weighed by the jury would permit a determination of actionable negligence without regard to any violation of section 22504. The statements presented a question of fact whether defendants' conduct was what might reasonably be expected of a person of ordinary prudence acting under similar circumstances. (*Tucker* v. *Lombardo* (1956) 47 Cal.2d 457, 464 [303 P.2d 1041]; *Beck* v. *Sirota* (1941) 42 Cal.App.2d 551, 557 [109 P.2d 419]; *Fouch* v. *Werner* (1929) 99 Cal.App. 557, 565 [279 P. 183].) The Gordons submitted that by parking out of the traffic lane they satisfied their duty of ordinary care and that they had no reason to assume that anyone would drive to the right of the fog line.

Plaintiffs stated, however, that they would introduce evidence that it was a frequent practice for cars to drive straddling the fog line or to the right of it and that their witness Brant would testify he was so driving and that defendants were aware of this custom. From such evidence the jury could find that defendants knew or should have known of the danger to other motorists created when they ignored the unpaved shoulder and parked their vehicle on the travelled part of a 65-mile-per-hour highway at dusk without lifting the hood, turning on the emergency blinkers, or setting flares. Clearly, the jury could find such conduct exposed others to an unreasonable risk of harm.

To summarize, the opening statements set forth facts showing violations of the Vehicle Code and the common law duty to exercise reasonable care from which the jury could reasonably have found defendants negligent. Defendants point out, however, that they were parked so as to be clearly visible, that the traffic lane was clear and

unobstructed, and that other cars passed them safely. They therefore contend that it was Mrs. Willis' inattention and failure to properly handle her vehicle that was the sole and proximate cause of the accident.

■ Plaintiffs' statements indicated that Mrs. Willis approached the Gordon car behind two full-sized cars which, given possible glare and that it was past sunset, may have prevented her from seeing the small Gordon vehicle until very late. The view of the two larger cars and the other cars that passed may not have been obstructed so that they were able to proceed safely or passed when there was no oncoming traffic. Assuming Mrs. Willis was within 50 to 70 feet of the Gordon car before she saw it, she may have thought at first that it was moving and had to react in a split second when she realized it was stopped, her sudden reaction causing her to swerve into plaintiff Galarza as she sought to avoid the Gordons' vehicle.

Whether from these facts defendants' conduct in parking on the curve had such an effect in producing the accident as to lead reasonable men to regard it as a cause of the collision, is a question of fact. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151]; *Landeros* v. *Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389]; Rest., Torts, § 431, com. a.) There is no requirement that defendants' negligent action be the sole cause of the accident. It is sufficient if it was a proximate cause or substantial factor in causing the collision. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Valdez* v. *J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 510 [124 Cal.Rptr. 467].)

Should the jury determine that defendants' negligence was a substantial factor in producing the accident but that the immediate cause of the harm was decedent's excessive reaction, the Gordons would not be relieved of liability if the risk of harm that resulted in plaintiffs' injuries and death through the intervening act of Mrs. Willis' swerving was foreseeable. (*Fish* v. *Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620 [128 Cal.Rptr. 807]; *Valdez* v. *J. D. Diffenbaugh Co., supra,* 51 Cal.App.3d 494; *Landeros* v. *Flood, supra,* 17 Cal.3d 399.) It was for the jury to decide whether decedent's swerving to the left was foreseeable and therefore one of the hazards which would make defendants' parking negligent. If so, its occurrence would not relieve defendants of liability.

We conclude that the trial court erred in granting the motions for nonsuit.

The judgment is reversed.

Tobriner, J., Clark, J., Richardson, J., and Newman, J., concurred.

**MOSK, J.**—I concur.

The opinion of the court is sound and I am in complete agreement with it. My only concern is with the issue to be faced by the trial court on remand: whether to apply comparative negligence principles to a wrongful death action.

Since this matter will be retried in the post-*Li* milieu (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]) the trial court is likely to feel bound by the prevailing view that the decedent's negligence is to be considered in defense of a wrongful death action. Under those circumstances application of comparative negligence will soften the harsh impact of contributory negligence. Nevertheless I suggest that the time is ripe for a reexamination of the authorities which have heretofore permitted the decedent's negligence to be a defensive factor in an action for wrongful death.

For the first half of this century trial courts blindly accepted the theory that the contributory negligence of a decedent automatically barred recovery by the heirs in a wrongful death action. In 1954 Judge Paul Nourse wrote a provocative law review article challenging the concept and pointing out that no appellate court had explored the reasons underlying the rule. (Nourse, *Is Contributory Negligence of Deceased a Defense to a Wrongful Death Action?* (1954) 42 Cal.L.Rev. 310.)

Within a year thereafter this court per Justice Schauer decided *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183 [288 P.2d 12, 289 P.2d 242], with Justice Carter dissenting and Justice Traynor dissenting partially on other grounds. The majority opinion responded to the Nourse article with a flat rejection of his analysis and reaffirmed the previously prevailing rule that negligence of the deceased will bar an action by the heirs for wrongful death.

*Buckley* did not long escape critical review. The next year (now Judge) Charles H. Phillips published a lengthy law review comment, conceding

that contributory negligence is now a defense to a wrongful death action but trenchantly asking, *"should* it be?"* (Comment (1956) 29 So. Cal.L.Rev. 344, 345.) The latter query has remained unanswered in any subsequent appellate decision.

Since in the instant matter we do not have the benefit of a presentation in depth by counsel, I shall neither discuss the issue at length nor reach any firm conclusion. I merely point out that the matter is not free of doubt.

It must be remembered that at common law all personal tort claims died with either the victim or the tortfeasor. The action for wrongful death is purely a creature of statute, originating in California in an act passed in 1862 (now Code Civ. Proc., § 377) and patterned after Lord Campbell's Act adopted in 1846. (See *Justus* v. *Atchison* (1977) 19 Cal.3d 564, 572-575 [139 Cal.Rptr. 97, 565 P.2d 122].) As Justice Coleridge pointed out in interpreting the latter, the wrongful death action does not effect a survival of the decedent's cause of action, it "gives to the representative a totally new right of action, on different principles." (*Blake* v. *The Midland Railway Company* (Q.B. 1852) 118 Eng.Rep. 35, 41.)

In the totally new right of action, it has been held that the heirs cannot recover for the decedent's pain and suffering prior to his death (*Parsons* v. *Easton* (1921) 184 Cal. 764, 770 [195 P. 419]; *Bond* v. *United Railroads* (1911) 159 Cal. 270, 277 [113 P. 366]) or as an element of wrongful death the medical expenses he incurred in treating his injuries (*Salmon* v. *Rathjens* (1907) 152 Cal. 290, 301 [92 P. 733]; *Nitta* v. *Haslam* (1934) 138 Cal.App. 736 [33 P.2d 678]). Courts have meticulously limited the damages of the heirs to their own loss.

Since the issue is not the injury sustained by the decedent but only the damages suffered by the heirs, a legitimate question emerges as to whether the conduct of the decedent should be a defense to the action brought by the heirs. Certainly it cannot be said in the words of Civil Code section 1714, the statutory definition of contributory negligence (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at p. 821), that the widow and minor children of a man killed by the negligence of another have in whole or in part "willfully or by want of ordinary care, brought the injury" upon themselves. It appears that even the majority in *Buckley* had some fleeting reservations, for they declared that whether they viewed "the origin of the contributory negligence rule in wrongful death cases as being sound in law and reason or as being questionable in both, the rule

itself has emerged as progenerate in its own right." (45 Cal.2d at p. 199.) I suggest that reverence for stare decisis does not compel blind adherence to a rule questionable in law and reason merely because of its uncritical repetitive application.

To allow contributory or comparative negligence as a defense to the action brought by the heirs is to impute the decedent's negligence to the heirs. Yet we have abandoned the doctrine of imputation of negligence in other circumstances when the allegedly negligent party dies. *Flores* v. *Brown* (1952) 39 Cal.2d 622 [248 P.2d 922], is an example. Previously the negligence of a deceased husband was imputed to the surviving wife and would bar recovery by her for her own injuries or the wrongful death of a minor child. Justice Traynor in *Flores* observed that "When the husband is dead, not only is the reason for the rule imputing his negligence to his wife gone, but to apply it defeats its own purpose. It is but a windfall to a defendant who negligently injures a wife or causes the death of a minor child that recovery may be barred because the wife's husband was also negligent." (*Id.* at p. 632.)

In sum, it is clear that wrongful death legislation was designed to afford a remedy not available at common law for damages the heirs suffer in their own right. It is unrelated to the damages that were suffered by the decedent prior to his death. Any rationale is suspect that permits consideration of the conduct of the deceased to reduce or defeat the independent damages suffered by the heirs.

I concede that *Buckley* v. *Chadwick,* decided by a divided court, has been the prevailing authority over the past two decades. But as our principles of negligence have been undergoing significant revision pursuant to *Li,* it appears appropriate to reconsider *Buckley,* both its majority opinion and the provocative dissent of Justice Carter (45 Cal.2d at p. 203 et seq.). With adequate presentation by counsel and thoughtful reflection on this issue, we may well conclude to be guided by the principle embodied in Civil Code section 3510: "When the reason of a rule ceases, so should the rule itself."

Bird, C. J., concurred.