Filed 9/9/16  Universal Interactive LLC v. Anton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| UNIVERSAL INTERACTIVE LLC et al., | |
| Plaintiffs and Appellants, | G051512 |
| v. | (Super. Ct. No. 30-2010-00362995) |
| CHARLES ANTON III, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer and Robert J. Moss, Judges.  Affirmed.  Motion to augment record.  Granted.

Winthrop Law Group and Reid A. Winthrop for Plaintiffs and Appellants.

Sterling Scott Winchell and Sterling Scott Winchell for Defendant and Respondent.

\*　　　\*　　　\*

**INTRODUCTION**

Plaintiffs Joel Barry Shamitoff, Universal Interactive LLC (Universal), and Universal Interactive Licensing, LLC (Universal Licensing), appeal from a nonsuit order made at the beginning of trial.[1]  Shamitoff, Universal, and Universal Licensing are referred to collectively as Plaintiffs.  They contend the trial court erred by denying their request for a trial continuance, by granting a nonsuit before opening statements, and by denying their motion for a new trial.

Applying the deferential abuse of discretion standard, we conclude the trial court did not err by denying Plaintiffs' motion, made on the first day of trial, to continue the trial.  Although the court erred by granting nonsuit before opening statements, the error was harmless because Plaintiffs' counsel acknowledged he had no witnesses or evidence to present.  Plaintiffs did not present evidence of circumstances that would constitute an irregularity in proceedings or abuse of discretion by the trial court justifying a new trial.  We therefore affirm.

**BACKGROUND**

**I.  Complaint; Oral Settlement**

Plaintiffs' complaint, which was filed in April 2010, asserted causes of action for indemnity, contribution, breach of contract, declaratory relief, breach of

---

[1]  The nonsuit was made by unsigned minute order.  To be appealable, an order or judgment of nonsuit must be in writing, signed by the court, and entered in the action. (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 763; *Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 448, fn. 1; *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1420, fn. 1; see Code Civ. Proc., §§ 581c, subds. (a) & (c), 581d.)  For that reason, we invited the parties to submit letter briefs addressing whether this appeal should be dismissed for lack of appellate jurisdiction.  In response, Plaintiffs obtained and submitted to this court an order of nonsuit signed by the trial court on July 6, 2016 and made retroactive to the date of the minute order.  On our own motion, we augment the record with the signed order of nonsuit.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)  We are satisfied that we have jurisdiction over this appeal.

contract, and promissory fraud. The causes of action were based on or arose out of a management and consulting agreement entered into in 2007 between Universal and defendant Charles Anton III.

A jury trial was set for December 2, 2011. A month before trial, the trial date was vacated by the court upon ex parte application of Plaintiffs. The trial was reset for December 17, 2012. The parties prepared for trial and submitted exhibit lists, witness lists, and other pretrial documents.

On the day set for trial, the parties commenced settlement negotiations. On December 19, 2012, Plaintiffs' counsel filed a notice of settlement. The next day, Plaintiffs' counsel and Anton, who represented himself, appeared in court before Judge Ronald L. Bauer to announce the settlement and place its basic terms on the record. Neither Shamitoff nor a personal representative of Universal or Universal Licensing was present. Plaintiffs' counsel stated he would draft the written agreement.

The parties did not reach agreement on the terms of a written settlement agreement. In December 2013, Plaintiffs brought a motion under Code of Civil Procedure section 664.6 to enter judgment against Anton and enforce the oral settlement. Anton, who still represented himself, opposed the motion.

The trial court (Judge Bauer) heard the motion on April 28, 2014 and denied it.[2] The court ruled that the oral settlement agreement was not enforceable under Code of Civil Procedure section 664.6 because Shamitoff was not present in court when the terms of that agreement were placed on the record. The court acknowledged it "should have been more demanding that Mr. Shamitoff show up in court." The court set a trial date of June 30, 2014.

---

[2] Plaintiffs filed a motion to augment the record with a transcript of the hearing on April 28, 2014. Anton filed opposition to that motion. We exercise our discretion to grant the motion to augment. (See Cal. Rules of Court, rule 8.155(a)(1)(B).)

## II. First Request for Trial Continuance

On June 9, 2014, Plaintiffs' counsel brought an ex parte application to continue the trial. The good cause identified in support of the application was Shamitoff had a life-threatening medical condition and his treating physician, Dr. Richard J. Kempert, had restricted Shamitoff's activities for the next 120 to 150 days. Dr. Kempert stated in a declaration that Shamitoff suffers from "a very significant prolapsed mitral valve condition and an associated panic attack disorder." Dr. Kempert recommended that Shamitoff "not engage in any stressful activities for the next 120-150 days" so that Dr. Kempert would "have the opportunity to fairly evaluate the effectiveness of the treatment regimen in dealing with routine, non-stressful activities." The trial court (Judge Bauer) granted the application and continued trial to December 15, 2014.

In October 2014, Anton, now represented by counsel, filed a motion to consolidate the case with a case entitled *Gorr v. Universal Interactive*. On November 10, 2014, the trial court denied Anton's motion to consolidate. The minute order denying the motion stated, "Jury Trial currently set for 12/15/2014 to remain on calendar."

## III. Second Request for Trial Continuance

On the day set for trial, Plaintiffs, represented by new counsel, brought another ex parte application to continue trial. The application raised several grounds for a continuance, two of which—Shamitoff's health status and a claimed business emergency on the part of Universal and Universal Licensing—are relevant here.

In support of the ex parte application, Plaintiffs submitted a declaration each from Shamitoff, Dr. Kempert, and Michael D. Moran, M.D., who is a cardiovascular specialist.

*Shamitoff Declaration*: Shamitoff declared the litigation was causing him anxiety and distress. He described the business emergency as follows: "We have recently been informed that our manufacturer in China needs to move forward, complete the testing, do the initial test runs on creational elements of the project and then finally

4

start until commercial production [*sic*]. If this production does not happen in the relatively near foreseeable future th[e]n we run the risk that vital components and elements of this project which include discarding our production molds and templates could occur whether we like it [or] not. So I must travel to China ASAP to be involve[d] in the next step and to further finalize the plans to move forward. I and most likely possible others must travel to China for this purpose. Failure to go would result in catastrophic losses of investment and profitable operation."

*Dr. Kempert Declaration*: Dr. Kempert repeated his opinion expressed in his earlier declaration that Shamitoff suffers from "a very significant prolapsed mitral valve condition and an associated panic attack disorder." Shamitoff's condition was "life-threatening" and required "constant monitoring and treatment." Dr. Kempert had examined Shamitoff on December 5, 2014 and, based on that examination, was of the opinion that Shamitoff could not at the present "safely participate in any legal proceedings as I believe that they will create too much stress and could lead to very serious, potentially catastrophic consequences." Dr. Kempert stated that Shamitoff should not participate in any stressful activity for 120 days, during which period Dr. Kempert could evaluate the effectiveness of a treatment regimen to include new medications. He believed Shamitoff might be able to deal with stressful events "after the 125 to 155 days from the time Mr. Shamitoff starts this new treatment regime." As for Shamitoff travelling to China, Dr. Kempert stated, "[o]nce I see the medications appear to be working for Mr. Shamitoff's benefit, I see no reason why a trip to China to work on his project would be prohibited as I believe it would be something Mr. Shamitoff would find beneficial and therefore reduce stress, not increase it."

*Dr. Moran Declaration*: Dr. Moran declared that he had examined Shamitoff and his mitral valve prolapse "is indeed serious and leaking severely." Dr. Moran stated that surgery was the only "ultimate cure" for this condition and the "urgency" for surgery depended on the symptoms. He concluded: "So long as

5

medication proves successful to alleviate and stabilize Mr. Shamitoff's condition, surgery may be deferred for some months. It is my opinion that physiological symptoms do not presently indicate an urgency for immediate or imminent surgery."

The ex parte application for a trial continuance was not served on Anton's counsel until all counsel appeared in court on December 15, 2014 for trial. Plaintiffs' new counsel, William Stocker, explained the reason for the delay was, "I had considerable difficulty with the client and the substitution process and the doctor's declarations getting those things edited and approved." The court took other matters to allow Anton's counsel to review the ex parte papers.

When the matter reopened, Anton's counsel announced he opposed the request for a continuance. Counsel also stated that the declarations from Dr. Kempert and Dr. Moran were not included in the papers he had received. The declarations also had not been presented physically to the court, which read electronically filed declarations. When asked by the court whether he was ready to proceed with trial, Anton's counsel replied: "Not really. We haven't had an issues conference. We haven't done anything. Mr. Stocker hasn't even subbed into the case. [¶] There's no way to communicate with the party himself. There's one individual and two entities." Anton's counsel confirmed, however, that Anton opposed the request for a trial continuance.

Plaintiffs' counsel argued that the success of Shamitoff's manufacturing project could affect the settlement of "this and other cases." Counsel argued: "So there is, of course, the fact that if Mr. Shamitoff is not able to attend to that manufacture in China, this entire project and a tremendous investment will be lost." Plaintiffs' counsel argued he needed to add a couple of parties to the lawsuit and wanted to amend and stated: "[T]here's a number of things that, as I see it, . . . have to be done to make this case triable. There has been no discovery. And, clearly, if we were to exchange interrogatories, requests for admissions and whatnot, the resolution of this case might

6

become obvious. [¶] And there's no way that I could try the case unprepared today, and there's no way that Mr. Shamitoff can come to court today."

This exchange then took place:

"The Court: And the final point that I think has been emphasized in the papers is Mr. Shamitoff wants to go to China.

"Mr. Stocker: Yes, he does.

"The Court: "Yes, and it strikes this uneducated person that he is telling us what's important to him, and what's important to his health. The trip to China is what he wants to do. I can't believe that a trip to China to negotiate what he describes as the heart and soul of his life in this snapables activities, that is critical to all of these lawsuits, wouldn't cause him great stress and anxiety. [¶] And yet, he tells us that coming to court will cause him great stress and anxiety. In fact, I know that to be true. Everyone gets stressed out by coming to court. That's not unusual, but this man wants to fly to China, instead of coming to court.

"Mr. Stocker: Well, he wants to. But Mr. Shamitoff is a high functioning autistic person, highly introverted, highly brilliant, with a heart condition, who has been sued and been betrayed by a number of lawyers a whole bunch of times. And he is . . . really crazy about the litigation."

Stating "we need to proceed," the trial court denied the request for a continuance. The court remarked that "Mr. Shamitoff has run through many, many lawyers" and "[t]he pattern in this case has been Mr. Shamitoff, time and time again, has shed his lawyers and shed his obligation to come to court for trial." That same morning, the matter was assigned to Judge Robert J. Moss for trial.

## IV. Nonsuit

The trial court (Judge Moss) met with counsel briefly in chambers before calling the matter for trial. The court, addressing Plaintiffs' counsel, stated: "[I]t's my understanding that because of . . . the reasons set forth in your motion to continue, you

are unable to proceed with trial. You don't have any witness[es] or other evidence to offer; is that true?" In response, Plaintiffs' counsel stated, "[t]hat is correct." The court asked Anton's counsel if he wished to make a motion. Anton's counsel moved for a nonsuit.

The court stated: "The motion for non-suit is granted. I mean, you could make the opening statement and he could make his motion after that, but you wouldn't have any witnesses to proceed with or any other evidence to introduce, so I think instead of going through that exercise, I'll just grant the motion for non-suit and let the chips fall where they will." Plaintiffs' counsel stated: "I have no objection to skipping the exercise, Your Honor." An unsigned minute order was entered granting Anton's motion for a nonsuit. A signed order of nonsuit was entered on July 6, 2016 and was retroactive to the date of the minute order.

## V. Motion for a New Trial

On February 3, 2015, Plaintiffs filed a notice of appeal from a "[j]udgment after court trial" on "12/15/2014." One week later, Plaintiffs filed a notice of intention to move for a new trial pursuant to Code of Civil Procedure section 657. Plaintiffs filed the motion papers in March 2015.

With the motion for a new trial, Plaintiffs submitted a declaration from Stocker, who stated he was 72 years old, suffered from hypertension, agitation, and stress, and a week before trial had been given a medication to prevent stroke. That medication, and a mood-moderating medication he was already taking, produced the side effects of drowsiness, dizziness, and disorientation. Stocker declared that when Judge Bauer called the case for trial on December 15, denied the request for a continuance, and transferred the case to Judge Moss, Stocker was "surprised, disoriented and confused" and realized he was not himself. Stocker did not adequately respond to the motion for a nonsuit. He stated in his declaration: "In retrospect, it is now clear to me that dullness imposed by the combined effects of the two medications caused me to fail to

8

be responsive to the situation, by alerting the court to my situation and failing to urge the court to trail the case for several days or even a week, so that I could assemble secondary witnesses and prepare. Further, due to my disorientation from the medications, I failed to effectively advise the court that there would be no prejudice whatsoever to the Defendant[] by delaying the non-suit at least until Plaintiff[s] presented [their] case in chief. Such failure to think on my feet as usual, was the result of my unanticipated impairment, which failure deprived Plaintiff[s] of adequate, effective counsel at this key juncture of the case."

The trial court denied the motion for a new trial.


## DISCUSSION

## I.

### The Trial Court Did Not Err by Denying Plaintiffs' Request for a Trial Continuance.

"Trial continuances are disfavored and may be granted only on an affirmative showing of good cause." (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1127; Cal. Rules of Court, rule 3.1332(c).) Denial of a request for a trial continuance is reviewed under the abuse of discretion standard. (*Thurman v. Bayshore Transit Management, Inc.*, *supra*, at p. 1127; *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 250-251.)

"The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.)

9

A request for a trial continuance must be made "as soon as reasonably practical once the necessity for the continuance is discovered." (Cal. Rules of Court, rule 3.1332(b).) Each request for a continuance must be considered on "its own merits" based on circumstances indicating "good cause." (*Id.*, rule .1332(c).) As relevant here, circumstances indicating good cause include "(2) [t]he unavailability of a party because of death, illness, or other excusable circumstances" and "(3) [t]he unavailability of trial counsel because of death, illness, or other excusable circumstances." (*Id.*, rule 3.1332(c)(2) & (3).)

Plaintiffs argue they established good cause for a continuance based on the unavailability of a party—Shamitoff—and the unavailability of trial counsel. We note that the failure by Plaintiffs' counsel to serve opposing counsel with the ex parte motion papers, and to present them to the trial judge, would justify the trial court's decision.

The trial court did not err in finding that Plaintiffs failed to make an affirmative showing of good cause. A primary reason given for seeking a trial continuance was that Shamitoff was unavailable due to illness or other excusable neglect. To show illness, Plaintiffs submitted declarations from Shamitoff, Dr. Kempert, and Dr. Moran. The gist of these declarations was that Shamitoff had a heart valve condition which was "life-threatening" and required "constant monitoring and treatment" and suffered an associated panic attack disorder. This was the same reason given six months earlier for the first request for a trial continuance. Back then, in June 2014, Dr. Kempert also recommended that Shamitoff not engage in stressful activity for 120 to 150 days. Yet, in his declaration submitted in support of the second request for a trial continuance, Shamitoff stated he needed to travel to China "ASAP" to deal with manufacturing issues and that "[f]ailure to go would result in catastrophic losses of investment and profitable operation."

The trial judge is the judge of the credibility of declarations. (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1450.) The trial judge here could draw

10

the conclusion that Shamitoff's health conditions were created or exaggerated as necessary to avoid trial, or that those conditions were never going to improve to the point at which Shamitoff could testify and participate at trial. The trial judge made the comment that Shamitoff "is telling us what's important to him, and what's important to his health. The trip to China is what he wants to do." If Shamitoff was well enough to travel to China to deal with business issues, he was well enough to come to court for trial.

Plaintiffs argue Judge Bauer misconstrued the declarations in that Shamitoff did not state he was going to travel to China at the same time as the scheduled trial date, and Dr. Kempert stated Shamitoff could travel to China only once "the medications appear to be working for Mr. Shamitoff's benefit." Judge Bauer fairly construed the declarations. Shamitoff said he needed to go to China "*ASAP*" (italics added), which could be construed to mean *now* or *soon*. Dr. Kempert stated the trip to China might be beneficial to Shamitoff and reduce his stress; that is, Shamitoff could go to China in his then current condition. In the request for a continuance, one of the grounds stated for a continuance was "Business Emergency" (boldface omitted) as stated in Shamitoff's declaration, i.e., the need for Shamitoff to travel to China.

Plaintiffs did not seek a trial continuance "as soon as reasonably practical once the necessity for the continuance [was] discovered." (Cal. Rules of Court, rule 3.1332(b).) The request for a trial continuance was based on Shamitoff's preexisting health issues that were the basis for a trial continuance six months earlier. Plaintiffs delayed seeking the second trial continuance until the very morning of trial. The trial judge could reasonably conclude that the reason for the last-minute request for a trial continuance was Shamitoff's desire to go to China or was Plaintiffs' attempt to delay.

Even if the declarations compelled a finding that Shamitoff was not able to attend trial, the trial court was not required to grant a continuance. "The unavoidable absence of a party does not necessarily compel the court to grant a continuance. In such instance the court should be governed by the course which seems most likely to

11

accomplish substantial justice, and it may take into consideration the legal sufficiency of the showing in support of the motion and the good faith of the moving party."  (*Whalen v. Superior Court* (1960) 184 Cal.App.2d 598, 600.)

Plaintiffs argue a trial continuance should have been granted because their trial counsel, Stocker, was "very ill" on the day of trial.  They assert the reporter's transcript from December 15, 2014 reveals that Stocker "appears to be confused, and unable to even argue coherently for the trial continuance."  We read nothing in the reporter's transcript to indicate Stocker was confused or incoherent.  The trial judge, who saw and heard Stocker in person, made no comment to suggest Stocker appeared confused or incoherent.  Plaintiffs argue that Stocker admitted in his declaration submitted with the motion for a new trial that he was ill and confused on the day of trial.  No such declaration appeared with the request for a trial continuance.  Finally, Plaintiffs argue that Stocker only recently had been substituted in as counsel and was unable to engage in an issues conference with Anton's counsel.  But Stocker's predecessors had plenty of time—at least six months since the first trial continuance—to conduct an issues conference.

Other factors also weighed heavily against a trial continuance.  Factors for the trial court to consider when ruling on a request for a trial continuance include: "(1) The proximity of the trial date;  [¶]  (2) Whether there was any previous continuance, extension of time, or delay of trial due to any party;  [¶]  (3) The length of the continuance requested;  [¶]  (4) The availability of alternative means to address the problem that gave rise to the motion or application for a continuance;  [¶]  (5) The prejudice that parties or witnesses will suffer as a result of the continuance;  [¶]  (6) If the case is entitled to a preferential trial setting, the reasons for that status and whether the need for a continuance outweighs the need to avoid delay;  [¶]  (7) The court's calendar and the impact of granting a continuance on other pending trials;  [¶]  (8) Whether trial counsel is engaged in another trial;  [¶]  (9) Whether all parties have stipulated to a

12

continuance; [¶] (10) Whether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance; and [¶] (11) Any other fact or circumstance relevant to the fair determination of the motion or application." (Cal. Rules of Court, rule 3.1332(d).)

Here, Plaintiffs sought a continuance on the very first day of trial. Shamitoff's health issues—the heart valve condition and panic disorder—did not arise suddenly and Plaintiffs could have sought a trial continuance much earlier. (Cal. Rules of Court, rule 3.1332(d)(1).) Plaintiffs previously had sought and obtained a six-month trial continuance. (*Id.*, rule 3.1332(d)(2).) In their second request, Plaintiffs sought a lengthy, open-ended trial continuance based on representations that Shamitoff's condition *might* be better in 125 to 155 days. (*Id.*, rule 3.1332(d)(3).) Stocker was not engaged in another trial (*id.*, rule 3.1332(d)(8)), and Anton's counsel opposed a continuance (*id.*, rule 3.1332(d)(9)).

Plaintiffs raise a series of factors which, they contend, demonstrate the trial court abused its discretion by denying a trial continuance. They argue a continuance should have been granted because Anton's counsel was not prepared for trial, and the matter had to be assigned to a different courtroom anyway. By opposing the continuance, Anton's counsel represented he was ready, willing, and able to go forward with trial, whatever his state of preparedness.[3] The court calendar and the fact the trial judge was tending to another trial were factors to be considered (Cal. Rules of Court, rule 3.1332(d)(7)) but were not dispositive. Plaintiffs argue the trial judge knew the result of denying a request for trial continuance would be dismissal because Stocker was unprepared for trial. California Rules of Court, rule 3.1332(c) does not identify counsel's

---

[3] When the trial judge asked Anton's counsel if he were ready for trial, counsel did not say he personally was not prepared to try the case. Instead, Anton's counsel explained: "We haven't had an issues conference. We haven't done anything. Mr. Stocker hasn't even subbed into the case. [¶] There's no way to communicate with the party himself. There's one individual and two entities."

13

unpreparedness as a ground for continuing trial, and rule 3.1332(d) does not identify unpreparedness as a factor to be considered. While the trial judge perhaps could have considered counsel's unpreparedness, if excusable, in "the interests of justice" (*id.*, rule 3.1332(d)(10) or as "[a]ny other fact or circumstance" (*id.*, rule 3.1332(d)(11), the judge was not required to grant a continuance on that ground.

Plaintiffs argue that comments made by Judge Bauer when denying the request for a trial continuance "clearly reveal a hostile attitude towards Mr. Shamitoff rising to the level of bias." We categorically reject this argument. Judge Bauer fairly interpreted the declarations presented to him and, given all the circumstances, acted well within the bounds of reason by denying the request.

**II.**

**The Trial Court Did Not Err by Granting Anton's
Motion for Nonsuit.**

Plaintiffs contend Judge Moss erred by granting a nonsuit before opening statements. Code of Civil Procedure section 581c, subdivision (a) provides: "Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit." A nonsuit based on the opening statements is warranted only when the court can conclude from all the facts and inferences that there will be no evidence of sufficient substantiality to support a judgment in the plaintiff's favor. (*Willis v. Gordon* (1978) 20 Cal.3d 629, 633.)

Granting a nonsuit before opening statement is not reversible error "if it is clear the plaintiff could not have prevailed even if he had presented his opening statement." (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 114; see *Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 760, fn. 4; *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 747-749, 757-758.)

14

In this case, it is clear that Plaintiffs could not have prevailed even if they had presented opening statement. Plaintiffs' counsel, Stocker, represented he had no witnesses or evidence to present. Based on that representation, the trial court could conclude there would "be no evidence of sufficient substantiality to support a judgment in [Plaintiffs'] favor." (*Willis v. Gordon*, *supra*, 20 Cal.3d at p. 633.) Granting a nonsuit before opening statements therefore was harmless error.

## III.

### The Trial Court Did Not Err by Denying Plaintiffs' Motion for a New Trial.

Plaintiffs argue the trial court erred by denying their motion for a new trial because the denial of their request for a trial continuance and the order granting nonsuit constituted "[i]rregularit[ies] in the proceedings of the court, . . . or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." (Code Civ. Proc., § 657, subd. 1.)

A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal. (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.) An order denying a motion for a new trial will not be set aside unless there was an abuse of discretion that resulted in prejudicial error. (*Id.* at p. 872.) An order denying a motion for a new trial is reviewed on appeal from the underlying judgment (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19), which in this case is the order of nonsuit.

As we have concluded, the trial court did not err by denying Plaintiffs' request for a trial continuance or by granting a nonsuit. The declaration of Stocker, which was the evidentiary basis for Plaintiffs' motion for a new trial, does not alter that conclusion. In his declaration, Stocker stated that, on the day of trial, he was disoriented and confused from new medication, and, in such a state, failed to ask the court for a brief

15

continuance to assemble secondary witnesses.  That information was not before Judge Bauer when he denied the request for a continuance or before Judge Moss when he granted nonsuit.  In fact, Plaintiffs did not file the motion for a new trial until after they filed the notice of appeal.  Stocker's admitted "failure to think on my feet as usual" and failure to seek a brief continuance do not constitute an irregularity in proceedings or abuse of discretion by the trial court justifying a new trial under Code of Civil Procedure section 657, subd. 1.

## DISPOSITION

The judgment/order of nonsuit and the order denying Plaintiffs' motion for a new trial are affirmed.  Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.