[Civ. No. 22862. Fourth Dist., Div. One. Jan. 18, 1983.]

HELEN M. McGEE, Plaintiff and Appellant, v.
CESSNA AIRCRAFT COMPANY, Defendant and Respondent.

**COUNSEL**

Magana, Cathcart, McCarthy & Pierry, Daniel C. Cathcart and Deborah Mitzenmacher for Plaintiff and Appellant.

Gray, Cary, Ames & Frye, Rudi M. Brewster, James F. Stiven, Dennis A. Schoville and Stephen T. Landuyt for Defendant and Respondent.

## OPINION

**STANIFORTH, J.**—March 28, 1971, was a clear day. A 177 Cessna Cardinal took off from Warner Springs Airport. Shortly after takeoff the aircraft crashed and burned. Helen M. McGee was burned. Her burns were so severe both legs had to be amputated. McGee sued the manufacturer of the airplane, defendant Cessna Aircraft Company (Cessna). A jury trial resulted in judgment for Cessna. We reversed, holding McGee should have been allowed to present her cause on a theory of strict liability based on Cessna's failure to design a sufficiently crashworthy aircraft.[1]

McGee presented her case to a second jury. The jury returned judgment for Cessna. McGee complains this judgment is the result of the trial court's failure to properly limit the evidence and correctly instruct the jury. Five questions are presented in her appeal.

### FACTS

Although we reviewed the facts in *McGee* v. *Cessna Aircraft Co.*, *supra*, 82 Cal.App.3d 1005, we again briefly review the facts of the crash and note the evidence in the second trial included additional testimony relating to the aircraft's crashworthiness. Mrs. McGee, a 53-year-old mother of 9, was secretary to the principal of Grossmont High School with approximately 125 hours of flying time when the accident occurred. John H. Hedger owned the Cessna; he used it to teach flying. He taught McGee how to fly. McGee and Hedger were good friends and flew many trips together. McGee would sit in the left-hand, pilot's, seat; Hedger would sit in the right-hand, instructor's, seat.[2] Hedger did not charge McGee for all of their flying hours together, although McGee testified all of their flying hours were instructional as she was a fledgling pilot.

On the day of the accident, Hedger was to observe McGee and a friend and help them with cross-country flying and navigation skills in preparation for a contest. McGee was to fly from Warner Hot Springs to Bakersfield and her friend from Bakersfield to the Nut Tree. The crash occurred approximately a

---

[1]*McGee* v. *Cessna Aircraft Co.* (1978) 82 Cal.App.3d 1005 [147 Cal.Rptr. 694], hearing denied September 27, 1978.

[2]The instructor remains pilot in command even when the student has physical control over the aircraft. The aircraft has dual controls.

mile from the airport about three minutes after they took off from Warner Hot Springs.

The aircraft took off going east into a wind estimated at around 10 to 15 nautical miles per hour. Only a few moments after takeoff the aircraft turned and crashed into a small hill. The crash site was approximately 135 to 180 feet above the level of the airport. The shortest distance between Warner Hot Springs and Bakersfield would have been to execute a left hand turn from the runway. However, had McGee turned to the right she would have been flying over lower terrain.

When the aircraft crashed, McGee and Hedger were rendered unconscious. The two passengers in the rear seats were thrown forward but not critically injured. All four occupants were wearing seat belts but the aircraft was not equipped with shoulder harnesses. The two passengers in the rear were able to get out of the airplane through the right door. A fire began almost immediately. The passengers tried to get McGee out but they were not strong enough. They dragged Hedger from the aircraft and returned for McGee. McGee's legs were on fire.

Other than some superficial facial injuries, McGee's injuries consisted of third and fourth degree burns.[3] Muscle and bone tissue in both legs were burned; burns on her left leg were concentrated in the calf and the foot extending upwards to the groin area, burns in the right leg were primarily below the knee but extended into the buttock. Both legs were amputated. The amputations, revisions of the stumps, and skin grafting required six separate surgeries, consisting of over 16 hours of surgical procedures.

After 17 months, McGee attempted to return to work. Eventually, due to the pain and the effects of her medication, she had to quit and she has been unemployed since.

Experts on both sides testified as to general principles of flight, aerodynamics, flight regulations, standard flying procedures particularly those relating to Warner Hot Springs Airport, and the history, design, development and specifications of the 177 Cardinal Cessna relating both to the aircraft's flying capabilities and its crashworthiness. Rather than review this extensive and complicated evidence, we will discuss only that testimony relevant to the issues raised in this appeal.

---

[3]McGee's burn doctor testified a first degree burn is similar to a sunburn. A second degree burn is more severe, while a third degree burn affects the entire skin thickness. A fourth degree burn indicates the skin is burned away and the underlying body structure is affected.

## DISCUSSION

Both parties agree McGee's severe and permanent injuries were caused by the post-crash fire. McGee maintains the fire was caused by Cessna's failure to design a sufficiently crashworthy aircraft. She asks "Why, in a clearly survivable crash, the aircraft did not protect [her] from enhanced injuries sustained by collision with the interior of the aircraft and exposure to the fire?" Cessna rebuts claiming the fire was a natural result of a violent crash and the Cessna 177 Cardinal was sufficiently crashworthy.

McGee asserts this court has the power to determine the extent to which the issues in a complex case may be limited on retrial. (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].) McGee argues, based on Evidence Code sections 350 and 352, evidence concerning who piloted the aircraft and why the aircraft crashed should be excluded. Had McGee brought this action solely to recover damages for enhanced injuries suffered from the design defect relating to crashworthiness we might be inclined to agree. She did not present her case to the jury on this single theory. She argued two bases for liability alleging two separate design defects: the aircraft was built with flight design defects and the aircraft was not crashworthy. McGee offered evidence to prove the aircraft could not fly according to specifications and evidence the aircraft did not sufficiently protect the cockpit occupants in the event of a crash. Her principal argument at trial and the greatest volume of evidence presented related to her claim the crash was caused by flight design defects. Whether liability for the flight design defect is argued on negligence theory or strict liability theory, Cessna is entitled to prove the cause of the accident was the pilot of the aircraft and not the design of the aircraft. Therefore, who was flying the plane and why the plane crashed is relevant for both the plaintiff's cause and the defendant's claim of comparative negligence. (*Daly v. General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162].)

Cessna argues even if plaintiff's case were restricted to crashworthiness, Cessna should be permitted to attempt to show the crash itself was of such severity it was the sole proximate cause of the injuries and supersedes any defective design. In *Self v. General Motors Corp.* (1974) 42 Cal.App.3d 1 [116 Cal.Rptr. 575] and *Endicott v. Nissan Motor Corp.* (1977) 73 Cal.App.3d 917 [141 Cal.Rptr. 95, 9 A.L.R.4th 481], defendants were permitted to present evidence supporting this argument.

In *Trust Corp. of Mont.* v. *Piper Aircraft Corp.* (D.Mont. 1981) 506 F.Supp. 1093, the court discussed what type of evidence is relevant to Cessna's argument. The court held the plaintiff could not limit his claim to enhanced injuries in a crashworthiness case in order to preclude the aircraft manufacturer from

introducing evidence of the plaintiff's negligence. The court relied upon *Daly* stating: "[I]nquiry focuses on the product design as an integrated whole, and a consideration of all the factors that contributed to the event which caused the injury." (*Trust Corp. of Mont.* v. *Piper Aircraft Corp.*, at p. 1098.) The court continued: "[A]n examination of all the circumstances (e.g., speed, angle, weight, etc.), prior to and after impact is proper in fairness to the parties." (*Ibid.*)

Even though some of McGee's conduct would be relevant on a strict liability for enhanced injuries cause of action in order to determine such things as speed, angle, and direction of impact, under California law Evidence Code section 352, evidence which is more prejudicial than probative must be excluded. In this trial much evidence was admitted relevant to Cessna's negligence and strict liability for airworthiness design but irrelevant to whether the aircraft was crashworthy. On negligence theory as to the cause of the crash this evidence would be more probative than prejudicial, but on strict liability for crashworthiness much of this evidence is clearly prejudicial and should be excluded. For example, evidence showed McGee and her flight instructor, Hedger, were romantically involved. Hedger convinced McGee to tell the FAA she had more flying experience than she did. McGee inflated her flying hours in a report to the FAA in order to insure Hedger's insurance policy would cover the accident. Both Hedger and McGee denied they were controlling the aircraft when it crashed. On a strict liability for crashworthiness theory this extremely prejudicial evidence would not be probative for any cause of the fire relating to the speed, angle, direction, weight, etc., of the impact. (See *Daly* v. *General Motors Corp.*, *supra,* 20 Cal.3d 725, 744-746, evidence of intoxication was "inflamatory.") On the other hand, whether McGee was actually flying the airplane is critical for an analysis of comparative negligence on the theory of the aircraft's airworthiness. Since McGee argued her case on both theories, it cannot be held to be error for the court to admit the evidence.

II

██ McGee asserts the trial court's failure to instruct the jury to shift the burden of proving proximate cause to Cessna if Cessna violated federal air regulations constitutes reversible error. The jury instructions included Federal Aviation Regulation 23.1191[4] concerning specifications for aircraft firewalls

---

[4]Federal Aviation Regulation 23.1191, Firewalls, in force and effect at the time the subject aircraft was designed provided in part as follows: "(a) Each engine, . . . must be isolated from the rest of the airplane by firewalls, shrouds, or equivalent means. [¶] (b) Each firewall or shroud must be constructed so that no hazardous quantity of liquid, gas, or flame can pass from the engine compartment to other parts of the airplane. [¶] (c) Each opening in the firewall or shroud must be sealed with closefitting, fireproof grommets, bushings, or firewall fittings. . . . [¶] (g) *Firewall materials and fittings must resist flame penetration for at least fifteen minutes.*" (Italics added.)

and Federal Aviation Regulation (F.A.R.) 23.561[5] providing for protection of the occupants in emergency landing conditions.

McGee proffered an instruction which would shift the burden of proof on the issue of causation based on these regulations.[6] McGee argues the trial court should not have refused this instruction under Evidence Code section 669, subdivision (a). Evidence Code section 669, subdivision (a) provides:

"(a) The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance or regulation was adopted." McGee cites these regulations to prove both negligence per se and as proof the aircraft was defectively designed because violation of the F.A.R. is proof of a design defect. Under both a theory of negligence per se and strict liability for design defect, the burden of proof is on Cessna to prove the defect was not a proximate cause of the injury.

Cessna's witness, Alvarez, testified the aluminum firewall fittings on the Cessna Cardinal could not resist flame penetration for 15 minutes as required by the F.A.R. In fact, the fittings could only resist flame penetration for 10 to 40 seconds. There is no question but that McGee was one of the persons belonging to the class of persons protected by the statute and that the fire caused an injury the nature of which the statute was designed to prevent. A Federal Aviation Safety Regulation is entitled to as much weight as a statute, ordinance

---

[5]Federal Aviation Regulation 23.561, in force and effect at the time the subject aircraft was designed provided in part as follows: "(a) The airplane, although it may be damaged in emergency landing conditions, must be designed as prescribed in this section to protect each occupant under those conditions. [¶] (b) The structure must be designed to give each occupant every reasonable chance of escaping serious injury in a minor crash landing when—(1) proper use is made of belts or harnesses provided for in the design; and, (2) the occupant experiences the ultimate inertia forces shown in the following table: Ultimate Inertia Forces. Upward—3.0g. Forward—9.0g. Sideward—1.5g."

[6]The proffered instruction: "If you find that the defendant Cessna Aircraft Company violated one or more of the regulations contained in part 23 of the Federal Aviation Regulations previously read to you, the burden of proof on the issue of proximate cause shifts from the plaintiff to the defendant. That is, the defendant Cessna Aircraft Company has the burden of proving that the plaintiff's injuries and damages were not the proximate result of any violation of the Federal Aviation Regulations."

or regulation of a public entity under Evidence Code section 669, subdivision (a). (*Lightenburger* v. *United States* (C.D.Cal. 1969) 298 F.Supp. 813.) Once McGee proves Cessna violated the F.A.R. and the injury resulted from an occurrence which it was designed to prevent and brought herself within the class of people protected by the statute, the only issue remaining is whether the violation of the F.A.R. proximately caused the injury. The burden of proof on this issue is critical especially in this case because the fire also destroyed the physical evidence. (See *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756 [91 Cal.Rptr. 745, 478 P.2d 465].)

■ Similarly, McGee uses the violation of the F.A.R. to show a design defect. An inference of defective design based on the F.A.R. is necessary because the fire destroyed the accumulator tank and much of the evidence, and because the experts disagree as to whether the fire entered the cockpit through the firewall via the fittings or through the doors which were blown off or open during the accident.

The Law Revision Commission comment to California Evidence Code section 500 states: "In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact." This court has held "one of the principal purposes behind the strict product liability doctrine is to relieve an injured plaintiff of many of the onerous evidentiary burdens inherent in a negligence cause of action." (*McGee* v. *Cessna Aircraft Co.*, *supra*, 82 Cal.App.3d 1005, 1014.) After thorough analysis of the California cases (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229]; and *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]), we concluded: *"[O]nce the plaintiff* makes a *prima facie showing that the injury was proximately caused* by the *product's design*, the *burden should appropriately* shift to the *defendant to prove, in light of the relevant factors, that the product is not defective."* (*McGee, supra,* 82 Cal.App.3d at p. 1014.) Violation of the F.A.R.'s may make this prima facie showing.

This result is consistent with the recent case *Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112 [184 Cal.Rptr. 891, 649 P.2d 224]. The issue in *Campbell* was "What quantum of evidence must the plaintiff in a products liability action produce initially in order to establish a prima facie case of liability under *Barker* v. *Lull* . . . ?" (*Id.,* at p. 115.) Campbell was thrown

from her seat in a bus when the bus made a sharp turn. She alleged the bus was defectively designed in that her seat lacked handrails or guardrails. Campbell was sitting in the first forward facing seat in the bus. All of the other seats had a grab bar. No bar was in front of plaintiff's seat. She testified when she was propelled from her seat, she reached for something to hold onto but "there was nothing there to grab." At the close of Campbell's case, General Motors moved for nonsuit based on Campbell's failure to introduce evidence sufficient to establish a defective design. The trial court granted the motion. Campbell appealed.

Even though the issues in *Campbell* arose after a motion for nonsuit, the issue in the case is instructive for the quantum of evidence necessary to establish a prima facie case of liability under *Barker*. In its discussion of *Barker*, the Supreme Court described two alternative tests for establishing whether a product is defectively designed. The second *Barker* test is applicable here. The Supreme Court said: "Under the second prong of *Barker*, the plaintiff must establish a prima facie case of causation. That is, evidence must be adduced which would permit a jury to find that a design feature of the product was a proximate cause of plaintiff's injury. Once plaintiff has made such a showing, the burden of proof shifts to respondent under the second *Barker* test." (*Campbell*, 32 Cal.3d at p. 119; fn. omitted.) The court explained: " '[I]nasmuch as this conclusion flows from our determination that the fundamental public policies embraced in *Greenman* dictate that a manufacturer who seeks to escape liability for an injury proximately caused by its product's design on a risk-benefit theory should bear the burden of persuading the trier of fact that its product should not be judged defective, the defendant's burden is one affecting the burden of proof, rather than simply the burden of producing evidence. [Citations.]' " (*Campbell*, at p. 119, quoting *Barker*, *supra*, 20 Cal.3d at pp. 431-432.) *Campbell* offers three factors for consideration of the prima facie case of causation. Plaintiff must come forward with evidence concerning (1) her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety. (*Campbell*, *supra*, at p. 127.) McGee presented evidence she was an occupant of the aircraft, the fire caused her injuries and fire could enter the cockpit through the accumulator tank fittings which were not in compliance with specifications required by the federal aviation regulations. This evidence was sufficient to shift the burden of proof to the manufacturer: "Because most of the evidentiary matters which may be relevant to the determination of the adequacy of a product's design under the 'risk-benefit' standard—e.g., the feasibility and cost of alternative designs—are similar to issues typically presented in a negligent design case and involve technical matters peculiarly within the knowledge of the manufacturer . . . ." (*Barker*, *supra*, 20 Cal.3d 413, at pp. 431-432; *Campbell*, *supra*, 32 Cal.3d at p. 119; *McGee*, *supra*, 82 Cal. App.3d at p. 1014.)

This court in *McGee* v. *Cessna Aircraft Co., supra,* 82 Cal.App.3d 1005, discussed California cases applying negligence and strict liability law to second accident or crashworthiness situations. This opinion is also consistent with the cases concerning the failure of manufacturers to design crashworthy vehicles in other jurisdictions. *Larsen* v. *General Motors Corporation* (8th Cir. 1968) 391 F.2d 495, is the lead case and is followed by a majority of jurisdictions (these jurisdictions are listed in *Ford Motor Company* v. *Evancho* (Fla. 1976) 327 So.2d 201) and was adopted in California in *Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121, 126. *Larsen* holds manufacturers have a duty to design crashworthy, not crash-proof, vehicles because accidents although not an intended use are a foreseeable consequence of vehicle use. However, foreseeability only goes to whether there is a duty to provide for passenger safety in the event of an accident. The duty is to not create an unreasonable risk of enhanced injuries once an accident occurs.

Parallel to this analysis and the second prong of *Barker*, McGee argues failure to comply with F.A.R.'s requiring engine fires be excluded from the cockpit by the firewall for 15 minutes is a design defect which is unreasonably dangerous. The F.A.R.'s set a minimum standard for product safety, and Cessna failed to meet this standard. (See discussion *Turner* v. *General Motors Corporation* (Tex.Civ.App. 1974) 514 S.W.2d 497, 505, federal safety regulations may set minimum standards applicable under strict liability for defectively designed products in a crashworthiness case; and *Larsen, supra,* 391 F.2d at p. 506.)

*Endicott* v. *Nissan Motor Corp., supra,* 73 Cal.App.3d 917, was a product liability action involving an automobile seat belt. The seat belt broke when the plaintiff lost control of the automobile and the car struck an embankment and rolled over. The trial court refused to give plaintiff's requested instruction shifting the burden onto the automobile manufacturer to prove the ruptured seat belt did not enhance plaintiff's injuries. The plaintiff also argued the seat belt was defective because it did not comply with Vehicle Code section 27300. Although the applicable rules are set out in *Endicott*, the facts are significantly different. The court found "the circumstances sufficient to justify a shift in the burden of proof never arose" because "[p]laintiff's evidence merely presented a general probability of enhanced injury . . . ." (*Endicott*, at p. 927.) In this case, McGee and Cessna agree the cause of McGee's enhanced injuries was the fire. Thus, the relationship between the challenged design and the plaintiff's injuries is immediately apparent. (See *Horn* v. *General Motors Corp.* (1976) 17 Cal.3d 359 [131 Cal.Rptr. 78, 551 P.2d 398].)

The plaintiff in *Endicott* also attempted to invoke the doctrine of negligence per se based upon violation of a Vehicle Code. The plaintiff failed in this assertion for two reasons. First, the Vehicle Code section did not specify physical

engineering standards. It simply provided in general terms a seat belt must " 'prevent or materially reduce the movement of the person using the same in the event of collision or upset of the vehicle.' " (*Endicott,* 73 Cal.App.3d at p. 929.) Secondly, the plaintiff did not offer any evidence to show the design of the seat belt violated the statute. The F.A.R. in this case does specify particular engineering standards and the testimony showed the fittings failed to meet these standards.

■■ ■■ Both doctrines, negligence per se based on violation of a safety regulation and strict liability for defective products, shift the burden of proof onto defendants for reasons rooted in sound economic and public policy. (See *McGee* v. *Cessna Aircraft Company, supra,* 82 Cal.App.3d 1005, 1014; *Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413, 431-432; *Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121, 132-133; *Escola* v. *Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 462 [150 P.2d 436].) Because the experts were in conflict and because the physical evidence was destroyed by the fire, it is quite likely a result more favorable to McGee would have been obtained had the burden of proof been correctly allocated.

## III

■■ McGee next argues the trial court erred in using BAJI No. 3.75 instead of BAJI No. 3.76. The instruction given by the trial court reads: "A proximate cause of an injury is a cause which, in natural and continuous sequence, produces the injury, and without which the injury would not have occurred." McGee urges this causation instruction: "a legal cause of an injury is a cause which is a substantial factor in bringing about the injury." In legal jargon BAJI 3.75 describes "but for" causation; BAJI 3.76 describes "substantial factor" causation.

McGee relies upon *Fraijo* v. *Hartland Hospital* (1979) 99 Cal.App.3d 331 [160 Cal.Rptr. 246], as disapproving BAJI 3.75. *Fraijo,* however, was a case involving various defendants. Plaintiff argued their negligent acts occurring at different times all contributed to the patient's death. *Fraijo* concluded "The only situation where it seems generally recognized that the 'but for' proximate cause instruction is inapplicable is where it is claimed that two independent causes have concurred to bring about an event, either of which operating alone would have been sufficient to cause the result. (*Thomsen* v. *Rexall Drug & Chemical Co.* (1965) 235 Cal.App.2d 775 . . . .)" (*Id.,* at p. 346-347.)

In *Self* v. *General Motors Corp., supra,* 42 Cal.App.3d 1, the trial court gave BAJI Nos. 3.76 and 3.78. The Court of Appeal found prejudicial error and had judgment not been reversed for other reasons, would have reversed the judg-

ment for the trial court's failure to give the "substantial factor" instruction requested by the manufacturer. The specific instruction requested read: "If you find that the gasoline tank in the 1962 Chevrolet station wagon was improperly located, but that the fire would have occurred even if the tank had been properly located, its location was not a substantial factor in bringing about the fire and was, therefore, not a contributing cause thereof." (*Id.*, at p. 10, citing *Signorelli* v. *Potter* (1954) 43 Cal.2d 541, 545 [275 P.2d 449].)

Our court considered a similar issue in *Vecchione* v. *Carlin* (1980) 111 Cal.App.3d 351 [168 Cal.Rptr. 571]. Vecchione brought an action against a doctor and a hospital for the wrongful death of their infant daughter. The issue at trial was whether the child's death was caused by intracranial bleeding brought on by an overdose of medication or the result of intrauterine problems during pregnancy. We found substantial evidence supported the defense verdict. One of the issues on appeal was whether the jury should have been instructed on concurrent causes as contained in BAJI No. 3.78.[7]

This instruction is designed to be used where the injury would have resulted from either of two causes. It is based on the holding in *Thomsen* v. *Rexall Drug & Chemical Co.* (1965) 235 Cal.App.2d 775 [45 Cal.Rptr. 642]. "The 'but for' rule, long a rule of finding causation in this state, serves well to define what is legal causation but fails in the type of situation where several causes concur to bring about an event and either one of them operating alone could have been sufficient to cause the result . . . ." (*Vecchione,* at p. 359.)

Neither *Vecchione* nor *McGee* are cases involving concurrent causes. In *Vecchione* the death was caused either by the hospital's negligence or by prenatal and birth injuries. In this case it is conceded the injuries were caused by the post-crash fire. After this concession, the analysis becomes more complicated. In this case, the fire could have resulted either from the severity of the impact or the design of the aircraft. The principle announced in *Thomsen* and reiterated in *Vecchione* is "where there are concurrent causes, our law provides one cannot escape responsibility for his negligence on the ground that identical harm would have occurred without it." (*Vecchione,* at p. 359.)

We find the requested "substantial factor" instruction should have been given under the rules announced in *Self* v. *General Motors Corp. Vecchione* v. *Carlin* does not require a different result.

---

[7]This instruction reads: "Where two causes combine to bring about an injury and either one of them operating alone would have been sufficient to cause the injury, either cause is considered to be a [proximate] [legal] cause of the injury if it is a material element and a substantial factor in bringing it about, even though the result would have occurred without it."

## IV

■ McGee argues FAA investigator Robert Griscom should have been allowed to testify concerning the crashworthiness of the aircraft and the efficacy of the aircraft's post-impact safety features based on his observations at the scene of the accident. The trial court excluded this testimony as cumulative under Evidence Code section 352 and because according to federal regulation, federal aviation investigators are not permitted to give opinion testimony as experts. The proffered testimony included observations at the scene of the accident, standard calculations based upon those observations, and analysis of the post-crash fire and protection of the occupants afforded by the aircraft.

Although the trial court has wide latitude in determining whether evidence is cumulative (*People* v. *Albert* (1960) 182 Cal.App.2d 729 [6 Cal.Rptr. 473], in this case Griscom's testimony was unique. Griscom was the only observer to investigate at the scene of the crash. He was the only one able to analyze the accident after reviewing the wreckage before the salvors had removed it. (See *Buckwalter* v. *Airline Training Center* (1982) 134 Cal.App.3d 547 [184 Cal.Rptr. 659].) Furthermore, even if his testimony in some way coincided with plaintiff's experts, he was an independent observer and not subject to the same challenge against objectivity.

Cessna argues Griscom was precluded from giving opinion testimony by federal regulation. (14 C.F.R. §§ 9.11, 9.13.) In fact Griscom cited these regulations when he refused to answer defense counsel's request for a conclusion. The regulations permit an FAA employee to testify but prohibit the employee from offering expert or opinion testimony. FAA employees may "testify relative to that which they observed at accident scene and manner in which they conducted their investigation." (*Keen* v. *Detroit Diesel Allison* (10th Cir. 1978) 569 F.2d 547, 551.)

We conclude Griscom should be allowed to testify on matters relating to crashworthiness based on his personal observations at the scene of the accident, the manner in which he conducted his investigation and standard calculations based upon those observations. We trust opposing counsel to object and the trial court to limit his testimony if his testimony ranges into opinions and conclusions which he is not permitted to give under the federal aviation regulations or which exceed his expertise.

## V

■ McGee finally contends statements made by passenger witness Dorothy Watts Fickeisen to the FAA were improperly admitted. Fickeisen testified on direct examination:

"Q. During this flight, did you become aware of any significant turbulence involving the flight?

"A. No."

McGee's counsel objected when, in cross-examination to impeach Fickeisen, defendant's counsel read a statement given by Fickeisen to the FAA:

"Q. Reading the very brief statement, there, Mrs. Fickeisen:

" 'We were on take off at Warner Hot Springs. On turn-out of pattern we hit downdrafts and could not gain any altitude.'

"Was that a statement that you gave to the FAA?

"A. I gave that statement, but I later said that my terminology of downdrafts was not correct.

"Q. And when you later said that, to whom did you say that?

"A. When it was brought up in [the first] trial.

"Q. And your testimony here today was that you don't recall any particular turbulence in the flight, isn't that true?

"A. Yes.

"Q. That's your present recollection, you don't recall any particular turbulence.

"A. That's correct.

"Q. Such as might be encountered by a light plane if there are gusts or severe weather conditions or even mild weather conditions?

"A. Yes.

"Q. The flight seemed more or less smooth to you?

"A. Yes."

McGee argues that "turbulence" and "downdrafts" are terms of art and because they do not mean the same thing, they are not inconsistent and therefore the statement is inadmissible. Either term could reflect the witness'

perception of a drop in altitude and therefore the statement would appear to be inconsistent to a jury. However, counsel offered Fickeisen an opportunity to explain the inconsistency which she did. (Evid. Code, §§ 1235, 770.) Fickeisen stated:

"A. Like I said before, I have several times said that that terminology was not what I would use now." Plaintiff's counsel queried:

"Q. What terminology?

"A. 'Downdrafts.'

"Q. What would you use now?

"A. I would just say that we were not gaining altitude." The quality of her explanation merely goes to the weight afforded the impeaching testimony. It was not error to permit the testimony.

The judgment is reversed for the reasons set forth in II and III.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied February 7, 1983, and respondent's petition for a hearing by the Supreme Court was denied April 13, 1983. Richardson, J., was of the opinion that the petition should be granted.