[No. B015047. Second Dist., Div. Six. June 9, 1987.]

JOSEPHINE MAUPIN, Plaintiff and Appellant, v.
ALAN CLARK WIDLING, Defendant and Respondent.

Frazier, Dame & Doherty, Frazier, Doherty, Jennings & Neuhaus and Peter J. Groom for Plaintiff and Appellant.

Zajic & Lauritsen and Christopher J. Zajic for Defendants and Respondents.

## OPINION

GILBERT, J.— Here we hold that the court erred in giving BAJI No. 3.75 (7th ed. 1986)* in conjunction with BAJI No. 3.79. The jury was likely confused by the use of two different but alternate tests for establishing cause in fact in a negligence action. We therefore reverse the judgment.

### FACTS

The defendant Alan Widling was driving along State Street in Santa Barbara on the way back to high school after having lunch. Ahead of Widling by about 20 yards and approaching an intersection was the car driven by Mildred Carlson. Ahead of Carlson, partly protruding from the

---

*All BAJI instructions referred to are from the seventh edition unless otherwise noted.

extreme left turning lane and waiting for the light to turn green, was the car driven by plaintiff Josephine Maupin.

Widling slowed down to about 20 miles per hour, intending to change lanes to the right. He was looking over his shoulder and then in the rearview mirror when a passenger in the car warned him to slow down. Widling looked forward to discover he was only two to three feet from the Carlson vehicle, too close to avoid a collision. Now traveling at a speed of 10 to 20 miles per hour, Widling's car struck the rear end of Carlson's car, pushing it forward several feet.

Carlson's car came to a stop for three to five seconds after being hit, according to one witness at trial. But then her car suddenly accelerated so quickly that the front end lifted two feet off the ground while thick black soot fumed from the exhaust pipes. Carlson hit Maupin's car at a speed of about 20 miles per hour, propelling Maupin's car into the car in front of her. Maupin's car was destroyed and Maupin suffered physical injuries.

Maupin settled her claim against Carlson and sued Widling for negligence. At trial the court over objections from Maupin instructed the jury on proximate cause (BAJI No. 3.75) rather than legal cause (BAJI No. 3.76). The court also gave BAJI instruction No. 3.79 on intervening cause. The jury reached a general verdict for the defendant.

Maupin seeks to reverse the judgment because the instructions confused the jury and shifted the burden of proof on the affirmative defense of superseding cause. Maupin also objects to the court's awarding the defendant certain expert witness fees.

DISCUSSION

I

At trial, crucial issues for the jury included causation, i.e., the logical connection between Widling's negligent conduct and the injuries sustained by Maupin and whether Carlson's conduct was a supervening cause. ▓▓▓ The intervening act of a negligent third person will cut off a defendant's liability (thus "supervening") if the intervening act (or the type or risk of harm caused by the intervening act) is unforeseeable or extraordinary. (Rest.2d Torts, §§ 440, 447; *Akins* v. *County of Sonoma* (1967) 67 Cal.2d. 185, 199 [60 Cal.Rptr. 499, 430 P.2d 57]; *Pappert* v. *San Diego Gas & Electric Co.* (1982) 137 Cal.App.3d. 205, 209 [186 Cal.Rptr. 847].)

The court gave to the jury BAJI No. 3.75, which defines "proximate cause" as that "which, in *natural and continuous sequence,* produces the

injury, damage, loss or harm and without which the injury, damage, loss or harm would not have occurred." (Italics added.) The court declined to give the alternative instruction, BAJI No. 3.76, which defines "legal cause" as that "which is a *substantial factor* in bringing about the injury, damage, loss, or harm." (Italics added.)

The court also gave BAJI instruction No. 3.79 on supervening cause, which reads: "If you find that defendant [Alan Widling] was negligent and that his negligence was a *substantial factor* in bringing about an injury to the plaintiff but that the immediate cause of the injury was the negligent conduct of a third person, the defendant [Alan Widling] is not relieved of liability for such injury if:

"1. At the time of his conduct defendant [Alan Widling] realized or reasonably should have realized that a third person might act as he did; or the risk of harm suffered was reasonably foreseeable; or

"2. A reasonable person knowing the situation existing at the time of the conduct of the third person would not have regarded it as highly extraordinary that the third person had so acted; or

"3. The conduct of the third person was not extraordinarily negligent and was a normal consequence of the situation created by defendant [Alan Widling]." (Italics added.)

■ Maupin contends that the "natural and continuous sequence" of events requirement in BAJI No. 3.75 conflicts with the BAJI No. 3.79 instruction requiring that the defendant's negligence be a "substantial factor" in bringing about the injury. Maupin argues that the three-to five-second gap in time between Widling's collision into Carlson and Carlson's acceleration into Maupin could have been mistakenly seen by the jury as precluding causation because there was no "natural and continuous sequence" of events. The correct instruction, according to Maupin, would have been BAJI No. 3.76, which, like BAJI No. 3.79, uses the "substantial factor" test for causation and would not have confused the jury.

■ In determining whether the probable effect of a jury instruction was to mislead the jury and was so prejudicial as to require reversal, we review all circumstances of the case, including the evidence and the other instructions given. There are no precise formulas to follow. (*Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 671-72 [117 Cal.Rptr. 1, 527 P.2d 353]; *Butigan v. Yellow Cab Co.* (1958) 49 Cal.2d 652, 660-61 [320 P.2d 500, 65 A.L.R.2d 1].) The factors to be considered include the degree of conflict in the evidence on the critical issues; whether respondent's argu-

ment to the jury may have contributed to the misleading effect; whether the jury requested a rereading of the instructions; the closeness of the jury's verdict; and the effect of other instructions in remedying the error. (*LeMons v. Regents of University of California* (1978) 21 Cal.3d 869 [148 Cal.Rptr. 355, 582 P.2d 946].)

We do not, however, look for sufficiency of evidence in support of the verdict, nor do we assume that the jury accepted the facts most favorable to the prevailing party. We must assume that the jury might have believed the evidence favorable to the losing party. If we find that the error in instruction likely misled the jury and that if the correct instruction had been given the jury might have rendered a verdict favorable to that party, the judgment should be reversed. (*Henderson v. Harnischfeger Corp., supra,* 12 Cal.3d at p. 674; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 295, p. 296.)

## II

The term "proximate cause" does not fit within the confines of a clear definition. Justice Tobriner wrote, "[t]he concept of proximate causation has given courts and commentators consummate difficulty and has in truth defied precise definition." (*State Comp. Ins. Fund v. Ind. Acc. Com.* (1959) 176 Cal.App.2d 10, 20 [1 Cal.Rptr. 73]. Judges, even learned ones, attorneys, and law students have struggled with the concept. It has not been any easier for jurors although they usually have the advantage of common sense. (See, e.g., *Akers v. Kelley Co.* (1985) 173 Cal.App.3d 633, 658 [219 Cal.Rptr. 513], where the appellate court noted the difficulty in concentrating on the topic of proximate cause for even an hour or two.)

The confusion in part stems from the use of the term "proximate cause" to mean "causation in fact." Causation in fact asks whether the defendant's negligent conduct was the "necessary antecedent" to the injury, without which no injury would have occurred. (Prosser, *Proximate Cause in California* (1950) 38 Cal.L.Rev. 369, 375; Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 265.) It is but an element of proximate cause. (*Smith v. Lewis* (1975) 13 Cal.3d 349, 360-61, fn. 9 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231]; *Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 382 [165 Cal.Rptr. 449].)

Proximate cause asks the larger, more abstract question: should the defendant be held responsible for negligently causing the plaintiff's injury? (Prosser & Keeton, *supra,* at p. 266.) Whether a defendant's conduct is an actual cause of a plaintiff's harm is a question of fact, but the existence and extent of a defendant's liability is a question of law and social policy. (*Mosley v. Arden Farms Co.* (1945) 26 Cal.2d 213, 222-23 [157 P.2d 372]

(conc. opn. Traynor, J.); Prosser & Keeton, *supra,* at p. 264.) Proximate cause can mean more than cause in fact. (*Jackson* v. *City of San Diego* (1981) 121 Cal.App.3d 579, 588 [175 Cal.Rptr. 395].)

Whether an intervening cause will cut off a defendant's liability (supervening cause) is another consideration in determining whether proximate cause exists.  ▉  Supervening cause is a question of policy to be considered only after defendant is found to be the cause in fact of the injury. (*Ewart* v. *Southern Cal. Gas Co.* (1965) 237 Cal.App.2d 163, 169; Prosser & Keeton, *supra,* § 44 at p. 301.)

▉  There are two widely recognized tests for establishing cause in fact. The "but for" or "sine qua non" rule, unfortunately labeled "proximate cause" in BAJI No. 3.75, asks whether the injury would not have occurred but for the defendant's conduct. The other test, labeled "legal cause" in BAJI No. 3.76, asks whether the defendant's conduct was a substantial factor in bringing about the injury. (Prosser & Keeton, *supra,* § 41 at pp. 265-268.) In California, trial judges have used one test or the other. (Com. to BAJI No. 3.76, p. 95; *Fraijo* v. *Hartland Hospital* (1979) 99 Cal.App.3d 331, 346 [160 Cal.Rptr. 246].) But the court's discretion to give either instruction does not make the two equally lucid or appropriate. In some situations, a court must consider which instruction will least confuse the jury.

### III

BAJI No. 3.75 is famous for causing juror confusion. It has been criticized for its inexact terminology and incorrect sentence structure. "Proximate cause" is called by the BAJI authors a "misleading and confusing" term (com. to BAJI No. 3.76, p. 95), and the comment to BAJI quotes Prosser's reproach that "proximate" is an " '... unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness.' " (Com. to BAJI No. 3.75, p. 93.)

The phrase "natural and continuous sequence" has also been criticized as confusing and misleading, particularly in a situation where it is difficult to show clearly the sequence of events. (*Fraijo* v. *Hartland Hospital, supra,* 99 Cal.App.3d 331, 347.) It is a phrase "calculated to becloud [the juror's] thinking." (*Werkman* v. *Howard Zink Corp.* (1950) 97 Cal.App.2d 418, 429 [218 P.2d 43] (conc. opn. of Shinn, P.J.).)

A psycholinguistic study comparing juror comprehension of 14 BAJI instructions found BAJI No. 3.75 to be the most misunderstood instruction

of the sample.[1] Both terms "proximate cause" and "natural and continuous sequence" were cited as contributing to juror confusion. "Natural and continuous sequence" was criticized for being a misplaced modifier within the sentence, preceding its verb and leaving the juror "befuddled." (Charrow & Charrow, *Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions* (1979) 79 Colum.L.Rev. 1306, 1323, 1355.) Despite its problems, BAJI No. 3.75 is retained as a jury instruction, but only because of its long history of use in California. (*Fraijo v. Hartland Hospital, supra,* 99 Cal.App.3d at p. 347; com. to BAJI No. 3.75, p. 93.)

Prosser described "substantial factor" as a term "sufficiently intelligible to any layman to furnish an adequate guide to the jury ...." (Prosser, *Proximate Cause in California, supra,* 38 Cal.L.Rev. 369, 379.) The substantial factor language in BAJI No. 3.76 makes it the preferable instruction over BAJI No. 3.75. (*Fraijo v. Hartland Hospital. supra,* 99 Cal.App.3d at p. 347.) This is especially so where the evidence might lead the jury to misinterpret the phrase "natural and continuous sequence of events" to require an unbroken physical chain.

## IV

Here the jury may have faced more than the usual confusion over proximate cause because it was instructed to apply *both* the "but for" and the "substantial factor" tests. The jury was instructed that Maupin had the burden of proof to show that Widling's negligent conduct was the proximate cause of her injuries (BAJI No. 2.60), and the court defined proximate cause as a "natural and continuous sequence" of events without which the injury would not have happened. (BAJI No. 3.75.) The court then told the jury that if it finds the defendant's conduct was a "substantial factor" in causing the injury, it must then determine whether Carlson's conduct was a supervening cause. (BAJI No. 3.79.) The court did not inform the jury that *either* the "but for" test or the "substantial factor" test was sufficient to find defendant a cause in fact of plaintiff's injury. If it found Widling was a substantial factor in causing Maupin's injury, it did not also have to find a natural and continuous chain of events in order to render Widling liable.

Where the defendant's conduct is the stimulus for some other act which causes the injury, there is no break in the chain of causation. (*Bilyeu v. Standard Freight Lines* (1960) 182 Cal.App.2d 536, 544 [6 Cal.Rptr. 65.].) This includes conduct which causes another to panic where the panicked reaction causes the injury. Whether defendant's conduct was a sub-

---

[1] Luckily the study did not include appellate opinions.

stantial factor in producing the panic reaction is a question of fact for the jury. (*Willis* v. *Gordon* (1978) 20 Cal.3d 629, 635 [143 Cal.Rptr. 723, 574 P.2d 794].)

The jury may have believed Carlson's car came to a stop for three to five seconds and that she accelerated. They may have also believed that the acceleration was due to her panic. This does not mean her panic subsided in the interval, nor does it mean that the acceleration was unforeseeable to Widling because it was unlikely to happen. A particular type of accident may be reasonably anticipated even if such an accident had not occurred before. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 47 [123 Cal.Rptr. 468, 539 P.2d 36]; *Riley* v. *Grifall Trucking Co.* (1955) 136 Cal.App.2d 682, 686 [289 P.2d 31].)

■ The jury had before it evidence which could have supported a finding that Widling's negligence was a substantial factor in causing Carlson's collision into Maupin. Widling testified at trial that his car "tapped" Carlson's car and pushed it forward two or three feet, and that the 68-year-old Carlson told him after the accident that she felt like she was "hit by a semi." Police Officer Donald Capistran, who investigated the accident, testified to his belief that Carlson "either panicked, or her foot slipped accidentally off the brake ..." after her car was hit by Widling, and that she stepped on the accelerator "and accelerated from the first point of impact to the second." From this testimony the jury could infer that Carlson, in a panic after being hit by Widling's car, accidentally stepped on the gas instead of the brake.

It was foreseeable to Widling that a collision with Carlson might propel her car into the one in front of her. If the jury found Widling's conduct to be a substantial factor in causing the injury to Maupin, even though Widling did not foresee nor could have foreseen the manner in which it occurred (i.e., Carlson's panic reaction), he would still be liable. (*Gibson* v. *Garcia* (1950) 96 Cal.App.2d 681, 685 [216 P.2d 119]; Rest.2d Torts, § 435.)

By receiving BAJI instructions No. 3.75 and No. 3.79 the jury may have been so confused that it found Widling to have been a cause in fact of the accident and Carlson not a supervening cause, but still rendered a defense verdict because Widling was not the "proximate cause" of the accident.

This could have happened because in applying BAJI No. 3.79, the jury may have found that Widling was a "substantial factor" in causing the injury, and also may have found Carlson's conduct to be foreseeable or not extraordinary. When the jury applied BAJI No. 3.75, with its different

terminology to the facts, it could have easily found that because of the three-to-five-second lag by Carlson, Widling's negligence was not part of the "natural and continuous sequence" of events necessary for proximate cause. The jury did not know that the substantial factor test is only an alternative to the BAJI No. 3.75 instruction and not a separate test.

If the jury had used BAJI No. 3.76 instead of No. 3.75, there would have been no conflict. The substantial factor test would have been uniformly applied to the issues of cause in fact and supervening cause. Since a jury is bound to accept the court's instructions, and is likely to be confused and misled by conflicting statements, it is not easy to determine which charge controlled its decision. (*Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d at p. 673.)

Because the jury returned a general verdict in favor of Widling, we do not know which test for cause in fact the jury used. It may have found Widling not liable because of the absence of "proximate cause" or because of the presence of supervening cause. The error in instructions is prejudicial because it likely misled the jury and became a factor in the verdict. We may not speculate on what may have been the bases for the jury's verdict. (*Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d at pp. 670-71.)

Widling argues that any error was cured by giving BAJI No. 3.77, allowing the jury to find both Maupin and Carlson each to be concurrent "proximate causes" of the injury. But this was no cure because the jury was instructed with the BAJI No. 3.75 definition of proximate cause. If anything, BAJI No. 3.77 with its use of the term "proximate cause" would add to rather than detract from the jury's confusion.

Widling also argues that the question of whether BAJI No. 3.75 or No. 3.76 was the proper instruction is unrelated to the jury's application of No. 3.79. since cause in fact is an initial determination to be made before the jury considers intervening causes. Although this procedure is correct, it has been criticized as illogical. (*Ewart* v. *Southern Cal. Gas Co., supra,* 237 Cal.App.2d 163, 169.) We do not know what methods the jury used in applying the instructions. In any event, confusion would be present irrespective of which instruction the jury chose to grapple with first.

Widling next cites *McGee* v. *Cessna Aircraft Co.* (1983) 139 Cal.App.3d 179 [188 Cal.Rptr. 542], for the purported rule that the only time the giving of BAJI No. 3.75 is error is where it can be claimed that two independent concurring causes bring about an event and either one of them operating alone would have caused the result. In such a situation, the instruction is generally recognized as error. (*Thomsen* v. *Rexall Drug & Chemical Co.*

(1965) 235 Cal.App.2d 775 [45 Cal.Rptr. 642].) But such recognition does not mean that in other situations, such as the one here, the instruction may not also be reversible error.

## V

Maupin asserts that the "natural and continuous sequence" language of BAJI No. 3.75 shifts the onus of Widling's burden to prove that Carlson was a supervening cause. Widling had the burden to prove that Carlson's behavior in accelerating was "highly extraordinary" in order to cut off liability. (BAJI No. 3.79.) "Highly extraordinary" in the context of this instruction means unforeseeable, and does not mean outside the scope of that done by an ordinary person. (*Campodonico* v. *State Auto Parks, Inc.* (1970) 10 Cal.App.3d 803, 807 [89 Cal.Rptr. 270].) Maupin argues that by not giving a specific instruction so limiting the definition of "highly extraordinary," the court allowed the jury to equate her failure to prove a natural sequence of events with the occurrence of something highly extraordinary. Maupin's reasoning here is tortured and requires us to speculate as to the jurors' thoughts, an invitation we decline.

## VI

■ Maupin's remaining issue is that the trial court erred in denying her motion to tax costs as to expert witness fees to be paid to several expert witnesses retained by Widling. Because we reverse the judgment, the issue is moot. Nonetheless, the trial court was within its discretion in its ruling. (Code Civ. Proc., § 998.)

The judgment is reversed.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied July 7, 1987, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied August 26, 1987.