968 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bradley W. ELLIEN, Plaintiff-Appellee,
v.
CITY OF SAN JOSE; Paul Salerno, Defendants-Appellants.
 No. 91-15943.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1992.
Decided July 15, 1992.
 
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The City of San Jose and San Jose Police Officer Paul Salerno (hereinafter "appellants") appeal from the district court's award of $8000 in damages to Bradley Ellien. Appellants contend that the district court erred in awarding damages to Ellien and denying its motion for JNOV. They assert that there was insufficient evidence to support the jury's finding that Officer Salerno acted negligently. Appellants make three separate arguments in support of this contention:
 
 
 3
 One. The jury's verdict was not supported by substantial evidence as a matter of law. The jury based its finding on the erroneous belief that Salerno had a legal duty to retreat from the window after he saw Ellien enter his living room with a gun.
 
 
 4
 Two. Even if Salerno owed a duty to Ellien, Ellien failed to present sufficient evidence for the jury to conclude that Salerno breached this duty.
 
 
 5
 Three. Ellien did not present sufficient evidence for the jury to conclude that Salerno's conduct was the proximate cause of Ellien's injuries.
 
 
 6
 Finally, appellants contend that the district court erred by denying their motion for JNOV, because it had previously determined that Salerno acted reasonably in conducting the welfare check.
 
 
 7
 We disagree and affirm.
 
 I.
 
 8
 The standard for determining whether a motion for JNOV should be granted is " 'whether or not, viewing the evidence as a whole, "there is substantial evidence present that could support a finding, by reasonable jurors, for the nonmoving party." ' " Bjaranson v. Botelho Shipping Corp., Manila, 873 F.2d 1204, 1207 (9th Cir.1989) (quoting Quichocho v. Kelvinator Corp., 546 F.2d 812, 813 (9th Cir.1976)).
 
 
 9
 The jury found that San Jose Police Officer John Duncan was not negligent. Appellants argue that the only difference between the conduct of Duncan and Salerno was that Duncan moved away from the front door when he was informed that Ellien had a gun, whereas Salerno stayed by the window and did not retreat to a safe position. Appellants contend that the jury must have found that Salerno was negligent because they believed that Salerno had a legal duty to retreat from the window. Appellants argue that if this was the basis for the jury's verdict, the verdict was not based on legally sufficient evidence of negligence. Appellants point out that under California law, a police officer does not have a duty to retreat from an armed individual. Cal.Penal Code § 835a. We conclude that the question whether a California police officer has a duty to retreat is irrelevant to the disposition of this appeal. Appellants have not demonstrated that the jury based its finding on the notion that Salerno was negligent for failing to retreat. The record contains substantial evidence to support a finding of negligence without reliance on Salerno's failure to retreat.
 
 
 10
 In order to establish the negligence of a police officer under California law, a plaintiff must demonstrate that (1) the officer owed the plaintiff a duty of care, (2) the officer breached the duty by failing " 'to use such skill, prudence, and diligence as other members of [the] profession commonly possess and exercise,' " (3) there was a " 'proximate causal connection between the [officer's] negligent conduct and the resulting injury' " to the plaintiff, and (4) the officer's negligence resulted in " 'actual loss or damage' " to the plaintiff. Harris v. Smith, 203 Cal.Rptr. 541, 543 (Cal.Ct.App.1984) (quoting Budd v. Nixen, 491 P.2d 433, 436 (Cal.1971)). In general, a police officer has no duty to protect a citizen unless the officer has promised to do so and the citizen has relied on that promise. Williams v. State, 664 P.2d 137, 140 (Cal.1983) ("Recovery has been denied ... for injuries caused by the failure of police personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection."). However, where an officer undertakes to assist a citizen, the officer has the duty to exercise reasonable care in rendering aid. Id. at 141. A breach of the duty of care occurs when an officer places the citizen in peril or increases the risk of harm to the citizen when he or she is already in a dangerous situation. McCorkle v. Los Angeles, 449 P.2d 453, 458-60 (Cal.1969).
 
 
 11
 Applying the elements of negligence to the facts of this case, it is clear that Duncan and Salerno had the duty to exercise reasonable care and not increase the risk of harm to Ellien when they performed a welfare check at his residence. Appellants' contention that the jury did not base its verdict on a violation of this duty of care, but relied instead on Salerno's failure to retreat, is pure speculation.
 
 
 12
 Salerno testified that a police officer's heightened ability to observe potentially dangerous conduct enhances his opportunity to respond appropriately. Salerno stated that he approached Ellien's living room window in order to place himself in a better position to respond to any potential violence. Salerno also testified that, of the two officers, only he was in a position to see what was happening inside Ellien's house. Duncan was standing behind Ellien's front door and did not have a clear view into the living room.
 
 
 13
 Based on Salerno's admission that he had greater knowledge of the relevant facts and circumstances than Duncan, the jury reasonably could have concluded that Salerno was in a better position than Duncan to take appropriate measures so as not to compromise Ellien's safety. Contrary to appellants' contention, the record demonstrates there was substantial evidence to support a rational jury's finding that Salerno was negligent because he was in a better position than Duncan to exercise the duty of care owed to avoid endangering Ellien.
 
 II.
 
 14
 Appellants next argue that, even if Salerno owed Ellien a duty of care under California law, Ellien failed to present substantial evidence that Salerno breached this duty. We disagree. Ellien presented sufficient evidence to support the jury's finding that Salerno breached his duty of care.
 
 
 15
 The record shows that Salerno and Duncan did not formulate a plan or discuss how they should conduct the welfare check before they approached Ellien's residence, or while they were observing his movements inside the house. The evidence also reveals that Duncan and Salerno did not identify themselves as law enforcement officers at any time prior to the shooting. At trial, Ellien presented the expert testimony of Lou Reiter, a former Los Angeles Deputy Chief of Police, to show that Salerno was negligent in failing to plan the welfare check or to announce himself as a police officer. Reiter testified as follows:
 
 
 16
 Q. You have reviewed the conduct of Officer Salerno in handling the police activity on the night of March 22nd, 1989, from the evidence and materials you have seen, have you not?
 
 
 17
 A. Yes.
 
 
 18
 Q. Have you been able to form an opinion as to whether or not Salerno acted unreasonably in his conduct and participation in the check on Ellien's welfare that evening?
 
 
 19
 A. Yes.
 
 
 20
 Q. What is your opinion?
 
 
 21
 A. I think there were two things that were unreasonable on his part. One was that there was no kind of division of labor or plan made. It's not something you sit down and map out, but it's an idea that when you go there what kind of things you are going to be doing and what type of tactic you are going to use.
 
 
 22
 I think the most critical one, though, that he was in a position to have--when he saw Mr. Ellien approach with a shotgun to have made an announcement to attempt to create that relationship and diffuse the situation. When I heard his testimony yesterday, purposely he said he elected not to.
 
 
 23
 Reiter's testimony was admitted without any contemporaneous objection. In a subsequent hearing outside the presence of the jury, the district court denied a motion to strike Reiter's testimony. The court rejected this motion as untimely and made the following comment:
 
 
 24
 Mr. Greene [counsel for original defendants]: [W]e would ... move to strike the testimony because I don't think a plaintiff can simply find some individual that has some law enforcement background and ... create[ ] a standard of conduct that is not found in the constitution, is not found in the California Penal Code.
 
 
 25
 The Court: Well, there was no objection to the phrasing of any of the questions put to him when he was being asked his opinion as to the conduct of officers Duncan and Salerno. There was therefore nothing to rule upon as to the content of those questions.
 
 
 26
 Reiter's opinion that Salerno breached his duty to Ellien was supported by the facts presented through Salerno's testimony. Pursuant to Federal Rule of Evidence 704(a) "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a).
 
 
 27
 The defendants asked the jury to infer that the officers' conduct was reasonable and did not breach the duty of care owed to Ellien. The jury was entitled to reject appellants' view of the facts, and to accept Reiter's opinion that the officers' failure to plan their approach to Ellien or to identify themselves to him endangered Ellien's safety in violation of their duty.
 
 III.
 
 28
 Appellants also contend there was insufficient evidence for the jury to conclude that Salerno proximately caused Ellien's injuries. According to appellants, the main cause of Ellien's injury was his appearance at the living room window. They argue that Ellien's appearance at the window was not provoked by Salerno, because Ellien did not see or hear Salerno outside his home. Instead, Ellien went to the window solely because his dog was barking. Appellants' argument confuses the concept of proximate cause with the concept of cause in fact. There was sufficient evidence for the jury to conclude that Salerno was the cause in fact of Ellien's injuries.
 
 
 29
 Under California law, proximate cause and causation in fact are distinct legal concepts. Maupin v. Widling, 237 Cal.Rptr. 521, 524 (Cal.Ct.App.1987); Sagadin v. Ripper, 221 Cal.Rptr. 675, 686 (Cal.Ct.App.1985). "Causation in fact asks whether the defendant's negligent conduct was the 'necessary antecedent' to the injury, without which no injury would have occurred." Maupin, 237 Cal.Rptr. at 524. The cause-in-fact analysis has also been described as a "but for" test, under which "it is necessary to show that the defendant's negligence contributed in some way to the plaintiff's injury, so that 'but for' the defendant's negligence the injury would not have been sustained." 6 B.E. Witkin, Summary of California Law, § 968 (9th ed. 1988). "Proximate cause asks the larger, more abstract question: should the defendant be held responsible for negligently causing the plaintiff's injury?" Maupin, 237 Cal.Rptr. at 524.
 
 
 30
 "Whether a defendant's conduct is an actual cause of a plaintiff's harm is a question of fact, but the existence and extent of a defendant's liability is a question of law and social policy." Id. Appellants essentially assert that "but for" Ellien's appearance in the window, Duncan would not have shot him. We must therefore apply a cause-in-fact analysis to determine whether the jury properly found that Salerno was partially liable for Ellien's injuries.
 
 
 31
 Appellants correctly point out that Ellien's appearance in the window was a "but for" cause of his injuries and Salerno did not cause Ellien to come to the window. If Ellien had not come to the window, Duncan would not have shot him. The "but for" analysis of Ellien's conduct, however, is relevant only to the question whether the evidence was sufficient to support the finding that Ellien was contributorily negligent. That issue is not before us in this appeal. The jury could reasonably have found that Salerno's unannounced and unplanned presence at Ellien's living-room window was a cause in fact of the shooting:
 
 
 32
 The defendant's negligent act need not be the sole cause of the injury; it is enough that it be a cause. When the separate and distinct negligent acts of two persons are in substantially simultaneous operation, and contribute to cause the injury, "each is and both are the ... cause."
 
 
 33
 Witkin, at § 970 (emphasis in original, citations omitted).
 
 IV.
 
 34
 Appellants contend that the district court improperly denied appellants' motion for JNOV, based on the court's grant of summary judgment in favor of the original defendants on Ellien's Fourteenth Amendment claim of reckless endangerment. In explaining its decision to grant summary judgment on the reckless endangerment claim, the district court stated as follows:
 
 
 35
 The plaintiff in this case was no bystander to police activity; rather, he was the focus of a welfare check by the officers. Because the officers had been informed that plaintiff had been drinking heavily, possessed firearms, and was a significant suicide risk, they acted reasonably in attempting to assess the situation before identifying themselves to the plaintiff.... Accordingly, we must grant defendants' motion to dismiss plaintiff's Fourteenth Amendment claim.
 
 
 36
 * * *
 
 
 37
 Because factual issues remain as to the circumstances leading up to the shooting and the reasonableness of Officer Duncan's response, the remainder of defendants' motion for summary judgment is denied.
 
 
 38
 (emphasis added). Relying on the district court's statement that the officers acted reasonably in conducting the welfare check and that the only remaining factual issue was the reasonableness of Duncan's conduct, appellants argue that the district court was required to reverse the jury's finding that Salerno was negligent. Appellants offer no authority to support the proposition that a district court's rationale for issuing an interlocutory order granting summary judgment on one count operates as a bar to prosecution of a totally different cause of action, such as a state law claim of negligence.
 
 
 39
 One possible basis for appellants' argument may be that they believe the earlier ruling establishes the law of the case. "The 'law of the case' rule ordinarily precludes a court from reexamining an issue previously decided by the same court, or a higher appellate court, in the same case." Moore v. Jas H. Matthews & Co., 682 F.2d 830, 833 (9th Cir.1982). In granting summary judgment on the reckless endangerment claim, the district court did not purport to establish the law of the case concerning the sufficiency of the evidence produced at trial to show simple negligence. To the contrary, the district court denied summary judgment on plaintiff's negligence claim. This ruling indicates that the district court believed that there were genuine issues of fact in dispute regarding whether the defendants were negligent. Furthermore, the district court's comment that Salerno had acted reasonably was not part of a final order. No determination was made pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that the order dismissing the reckless endangerment claim was a final order. Accordingly, it was subject to change until a final judgment was entered.
 
 
 40
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3